THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID TRAIL, Defendant-Appellant.

Fourth District   No. 4—89—0595

Opinion filed May 17, 1990.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

John Turner, State's Attorney, of Lincoln (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, David Trail, was convicted in April 1989 of two counts of criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13) and sentenced to consecutive terms of 15 years' imprisonment. On appeal, defendant argues the following: (1) the trial court erred in denying his motion for severance; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the trial court erred in refusing to allow his son to testify; (4) the trial court erred in instructing the jury; (5) the prosecutor's closing argument denied him a fair trial; and (6) the prosecutor's conflict of interest denied him the effective assistance of counsel.

We affirm.

Defendant was convicted of two counts of criminal sexual assault based on acts he allegedly committed upon his stepdaughters, C.B. and D.B. At trial, C.B., who was then 19 years old, testified that defendant engaged in anal, oral, and vaginal intercourse with her. The anal intercourse began when she was 10 years old. She testified to repeated instances of vaginal intercourse with defendant from late 1985 through January 1987, when she was 16 and 17 years old. C.B. identified certain People's exhibits as letters written to her by defendant. These letters suggest an other-than-fatherly relationship between defendant and C.B. Defendant testified that C.B. must have forged the letters, but she denied doing so.

According to C.B., defendant also took nude photographs of her which he placed in a safety deposit box. The police examined the contents of that safety deposit box pursuant to a search warrant on June 1, 1988, at 10:30 a.m., and the box was empty. Earlier that same day, at 9 a.m., defendant had obtained access to that box. The box record showed that defendant had previously obtained access to the box on nine occasions between May 1987 and February 1988, the last such

occasion before June 1, 1988.

C.B. testified that although neither she nor defendant used contraceptives, she never became pregnant as a result of more than 200 incidents of vaginal intercourse. C.B. testified that she told no one about her sexual activity with defendant, but she thought that her sister, D.B., had, on one occasion, seen her and defendant engaged in sexual activity.

D.B., who was 17 years old at the time of trial, testified that she had witnessed defendant and C.B. engaging in sexual intercourse. D.B. also testified that defendant had engaged in vaginal intercourse with her in 1987 and 1988 when she was 15 years old. As was true with C.B., D.B. never became pregnant despite her using no contraceptives. D.B. told no one about the sexual activity.

Nancy Trail, defendant's ex-wife and the mother of C.B. and D.B., testified that she never saw the letters allegedly written to C.B. by defendant. She also testified that she did not witness any sexual activity between defendant and her daughters.

A documents examiner for the Illinois State Police crime lab compared the letters allegedly written by defendant to C.B. with handwriting samples identified as coming from defendant and concluded that defendant had written the letters in question. The samples came from handwriting exemplars obtained directly from defendant by a police officer pursuant to a court order and from various checks and notebooks which C.B. and Nancy Trail identified as containing defendant's handwriting. Defendant acknowledged that most of the writing in the notebooks and on the checks was his, but he also claimed that some of it was not his and that it had been written by his stepdaughters. The handwriting examiner also opined that an attempt had been made to disguise the handwriting in the exemplar obtained by the police officer from defendant.

Defendant testified on his own behalf and denied engaging in sexual activities with either C.B. or D.B. He testified that C.B. often told him she hated him. According to defendant, C.B. threatened to get even with him because sometimes he refused to purchase liquor for her.

Defendant said that he observed C.B. sign his name to various documents. He claimed that portions of some of the checks submitted as known samples of his handwriting contained the handwriting of either C.B. or D.B. However, the cross-examination of defendant demonstrated rather convincingly that his claims regarding these checks were all lies. Defendant also denied writing letters to C.B. or photographing her in the nude.

Defendant attempted to call his 12-year-old son, David, as a witness. An *in camera* hearing was held wherein David stated that he had seen both C.B. and D.B. copy defendant's signature and that he had heard his stepsisters talk about how much they hated defendant. David also testified about parties with alcohol held by C.B. and D.B. at their home. The trial court denied defendant's request to have David testify.

■ The first issue on appeal is whether the trial court erred in denying defendant's motion for severance. A defendant may be placed on trial in one proceeding for separate offenses if the offenses are based on the same act or on two or more acts which are part of the same comprehensive scheme (Ill. Rev. Stat. 1987, ch. 38, par. 111–4(a)). The trial court has substantial discretion in determining the propriety of joinder. (*People v. Terry* (1988), 177 Ill. App. 3d 185, 193, 532 N.E.2d 568, 574.) Its determination will not be reversed absent an abuse of discretion. *Terry*, 177 Ill. App. 3d at 193-94, 532 N.E.2d at 574.

■ There are no precise criteria for determining whether separate offenses are part of the same comprehensive transaction. (*People v. Duncan* (1987), 115 Ill. 2d 429, 441, 505 N.E.2d 307, 312.) A common method of operation, proximity in time and location of offenses, a common type of victim, similarity of offenses, and the identity of evidence needed to demonstrate a link between the offenses are some of the factors the courts have considered. (*Terry*, 177 Ill. App. 3d at 194, 532 N.E.2d at 574-75.) The trial court in the present case, in denying the motion for severance, found "a similarity of parties, setting, circumstances and partially, the time frame involved." We agree. Defendant was charged with two counts of criminal sexual assault which occurred within the same household during closely related periods of time. The offenses involved similar victims, defendant's teenage stepdaughters. On the facts of this case, evidence pertaining to one sexual assault count would have been admissible as "other crimes" evidence for the other count on at least the basis of similar *modus operandi*. We conclude the trial court did not abuse its discretion in trying these offenses together.

■ We emphasize that where, as here, "other crimes" evidence is properly admissible, the potential prejudice to a defendant of having the jury *decide* two separate charges is greatly diminished because the jury is going to be receiving evidence about both charges anyway. While we do not suggest that the admission of "other crimes" evidence should necessarily be determinative of the issue of severance, that admission is nonetheless a significant consideration.

■ Defendant next argues that the State failed to prove him guilty beyond a reasonable doubt. In support of his claim that the victims' testimony should not be believed, defendant argues that neither victim tendered a prompt complaint and neither victim became pregnant. However, neither a prompt complaint nor physical evidence, such as pregnancy, is required to sustain a sexual assault conviction. *People v. Foster* (1990), 195 Ill. App. 3d 926, 951; see also *People v. Cole* (1990), 193 Ill. App. 3d 990, 550 N.E.2d 723.

■ In *Cole*, this court held that the evidence was sufficient to sustain a conviction of aggravated criminal sexual abuse based almost exclusively upon the victim's testimony. The evidence presented in the instant case, consisting primarily of the victims' testimony and the incriminating letters identified as having been written by defendant, sufficiently establishes defendant's guilt beyond a reasonable doubt.

The following observations from *Cole* are equally applicable to this case:

> "The verdicts here reflect the jury's assessment of the credibility of the witnesses, a function particularly within its province as the fact finder. All the deficiencies in the State's case now being argued on appeal were similarly argued to the jury which actually saw and heard these witnesses. A reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. [Citations.] This is not such a case." *Cole*, 193 Ill. App. 3d at 995, 550 N.E.2d at 727.

Defendant also appeals the trial court's refusal to allow his son, David, to testify. Specifically, David was prepared to testify that he had seen the victims forge defendant's signature, he had heard the victims say they hated the defendant, and he had seen parties with alcohol held by his sisters at their home. The trial court denied defendant's request, citing David's age and his eagerness to testify. The trial court also determined that David's testimony was cumulative and not probative.

■ To the extent that the trial court barred David's testimony because of his age (12 years old) and his "eagerness to testify," the trial court erred. The record demonstrates that both the court and counsel believed an examination of David by the court out of the presence of the jury to be necessary before David could be permitted to testify. We note this trial took place in April 1989 and that section 115—14 (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—14), dealing with witness competency, was added to the Code of Criminal Procedure of 1963 by Public Act 85—1190, effective January 1, 1989 (Ill. Rev.

Stat., 1988 Supp., ch. 38, par. 115—14; 1988 Ill. Legis. Serv. 1329, 1331 (West)). That new section reads as follows:

"Witness Competency. (a) Every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter, except as provided in subsection (b).

(b) A person is disqualified to be a witness if he or she is:

(1) Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him or her; or

(2) Incapable of understanding the duty of a witness to tell the truth.

(c) A party may move the court prior to a witness' testimony being received in evidence, requesting that the court make a determination if a witness is competent to testify. The hearing shall be conducted outside the presence of the jury and the burden of proof shall be on the moving party." Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—14.

We interpret this new section as a legislative determination to discard the body of law that had developed regarding witness competency, particularly the more rigid of those former rules, such as always requiring competency hearings for prospective witnesses under 14 years of age.

In the present case, there is no suggestion of any kind that David was not a competent witness under section 115—14(b) (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—14(b)).

Similarly, the court erred in barring David's testimony to the extent that it engaged in a weighing of that testimony and found it lacking. It is not the trial court's role to evaluate witnesses and to permit the testimony of only those witnesses the court finds credible. Credibility determinations are peculiarly within the province of the jury and may never be the basis to reject otherwise admissible testimony.

Even though we find that the trial court erred by excluding David's testimony, we conclude that this error is not reversible on these facts. This error, in our judgment, could not reasonably have affected the result. (See *People v. Carlson* (1982), 92 Ill. 2d 440, 442 N.E.2d 504.) Had David testified, there is no likelihood whatsoever that defendant would have been acquitted.

In making this determination, we view David's testimony as being either substantially cumulative to evidence already before the jury or nonprobative. David testified *in camera* that C.B. and D.B. hated his father; yet, the ill will they bore him, especially C.B.'s ill will, was already evident. David said he saw C.B. and D.B. forge his father's sig-

nature when they needed a note from a parent for having missed school; yet, he never claimed to have seen either C.B. or D.B. forge his father's name to a check or write in his father's notebooks. David said parties involving C.B. and D.B. and alcohol at their home were sometimes held; this testimony, however, was probative of nothing.

The record also reveals that defense counsel was not at all certain whether he would even call David to testify. Indeed, it was defense counsel who requested the *in camera* examination of David in part, as he explained, to find out what David was going to say because he "had no idea what he is going to testify to. He may testify to matters that would harm us." Defense counsel's ardor to call David to testify measurably increased once the trial court indicated that David would not be so permitted. At that point, defense counsel registered his "strong objection" to the court's ruling.

■ Defendant also challenges the trial court's failure to instruct the jury that defendant could not be convicted of sexual misconduct occurring prior to July 1, 1984, the date the crimes charged were enacted. However, defendant did not tender a jury instruction relating to the pre-July 1984 conduct and failed to object to the instruction setting forth the elements of criminal sexual assault without mention of the issue of pre-July 1984 conduct. As a result, defendant has waived this issue. *People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1129, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

Furthermore, count I of the information charges defendant with sexual assault occurring during late 1985 through January 1987, and count II alleges conduct committed from 1987 until May 31, 1988. This case is clearly distinguishable from the authority cited by defendant, *People v. Wasson* (1988), 175 Ill. App. 3d 851, 530 N.E.2d 527, because *Wasson* involved a defect in the charging instrument. The present case, on the other hand, involves only the presentation of corroborating evidence which arose (in part) prior to the effective date of the new statute. Thus, on the merits, no error resulted.

■ Defendant also alleges that certain statements made in the prosecutor's closing argument denied him a fair trial. Specifically, defendant cites as error the prosecutor's characterization of defense counsel's argument as a smoke screen, his comment about defense counsel's failure to call a witness, and a statement of the prosecutor's personal opinion. However, defendant failed to object to any of the prosecutor's argument at trial. Again, we are presented with an argument by defendant's counsel on appeal regarding alleged grievous improprieties of the prosecutor's closing argument; yet, defendant's trial

counsel, who the record shows presented a vigorous defense, apparently found the prosecutor's closing argument sufficiently bland as to not warrant a single objection.

Unless the prosecutor's remarks constitute plain error, defendant has waived consideration of this issue on appeal. (*People v. Hall* (1986), 114 Ill. 2d 376, 418, 499 N.E.2d 1335, 1353, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.) Upon our careful consideration of the prosecutor's closing argument, we find it to be far from plain error. Indeed, we are not convinced that any of the prosecutor's argument was improper.

Finally, defendant argues that he was denied the right to effective and conflict-free counsel because the prosecutor had previously represented defendant on similar charges. Specifically, the prosecutor represented the defendant in 1987 on a charge of attempt (criminal sexual abuse) and delivery of alcohol to minors.

An attorney must not assist in the prosecution of a criminal case if he has acquired a knowledge of facts upon which the prosecution is predicated or if the cases are closely interwoven. (See *People v. Curry* (1971), 1 Ill. App. 3d 87, 91, 272 N.E.2d 669, 672.) However, the 1987 case did not involve defendant's stepdaughters and was based on a set of facts entirely different from those in the present case. Accordingly, we reject the argument that defendant was denied effective or conflict-free counsel.

Defendant further contends that the prosecutor's mere status as his former counsel renders that counsel ineligible to prosecute him in an unrelated manner. We do not agree, and we find no basis in law or experience for such a novel extension of sixth amendment rights. See *People v. Franklin* (1979), 75 Ill. 2d 173, 180, 387 N.E.2d 685, 688.

Affirmed.

LUND and GREEN, JJ., concur.