THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL D. HOKE, Defendant-Appellant.

Fourth District   No. 4—90—0428

Opinion filed May 9, 1991.

Daniel D. Yuhas and John Anthony Palombi, both of State Appellate Defender's Office, of Springfield, for appellant.

Tony Lee, State's Attorney, of Paxton (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On May 18, 1990, following a bench trial in the circuit court of Ford County, defendant Darrell D. Hoke was convicted of four counts of reckless homicide. (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a).) On June 25, 1990, the court sentenced defendant to a single term of 10 years' imprisonment. He appeals, contending (1) the evidence did not support the verdict, and (2) various procedural errors were made. We affirm.

Each count of the information charged defendant with the death of a different victim, all arising from the same automobile collision. Each count alleged that defendant's conduct was reckless because he (1) operated a motor vehicle with a blood-alcohol content of greater than 0.10; (2) drove at a greater than reasonable speed; and (3) disregarded a stop sign, thereby causing his vehicle to strike another vehicle causing the death of a person. The primary factual issue at trial was whether the defendant was the driver of the vehicle which crashed into the other vehicle.

The following facts were undisputed. On June 2, 1989, at approximately 8 p.m., a dark-colored Oldsmobile automobile failed to obey a stop sign located in a rural intersection of Ford County, and collided head-on with a red Chevrolet pickup truck. Following the collision, defendant was found lying facedown in a ditch north of the Oldsmobile. Jamie Swank was found on the floor of the passenger side of the Oldsmobile, and Rex Prewitt, Sr., and his son Joshua were found underneath the Oldsmobile. Rex Prewitt, Jr., and Matthew Hoke were found in the backseat of the Oldsmobile. The driver of the pickup truck, Swank, Rex Prewitt, Sr., and Joshua all eventually died from their injuries sustained in the collision.

Two witnesses, who arrived first on the scene, testified defendant was the only person who received facial injuries. Several State's witnesses testified they observed defendant and the other adult occu-

pants of the Oldsmobile drinking beer throughout the day of the accident. The witnesses also testified that Swank was driving the Oldsmobile at that time. At the scene of the accident, a number of beer cans were found inside and outside the Oldsmobile, as well as in a cooler in the rear of the car.

An accident reconstructionist testified as follows: (1) he calculated the speed of the Oldsmobile to be at a minimum of 59 miles per hour, and the speed of the pickup truck to be at a minimum of 55 miles per hour, at the time of the collision; (2) the skid marks found at the intersection of the collision revealed the driver of the Oldsmobile made little attempt to stop the car prior to impact; and (3) damage to the steering wheel and column indicated the driver was thrown into the steering wheel. At the conclusion of the State's case, the court received in evidence, over defense objection, a document indicating that as a result of a blood test taken in a hospital emergency room after the collision, defendant had a blood-alcohol content of 0.147 grams per deciliter. Receipt of this evidence created the most intricate ruling in this case.

Direct evidence that defendant was driving the Oldsmobile came entirely from the testimony of two six-year-old boys, defendant's son Matthew Hoke and Rex Prewitt, Jr. (Rex Jr.). After separate hearings, the court found both competent to testify but stated Rex Jr. was a "marginal case" because of his inability to remember and narrate events that transpired earlier in the year.

At trial, Rex Jr. testified as follows: (1) Jamie Swank was driving the Oldsmobile earlier on the day of the accident; (2) all the occupants of the Oldsmobile were out by a bridge and Swank fell from a tree and injured himself; (3) Swank could no longer drive and so defendant drove the car after Swank's fall; (4) defendant was driving at the time of the collision; (5) he could not remember where Swank fell from the tree or what he was doing there; and (6) he denied that at the time of the collision they were attempting to bring Swank to the hospital.

The State then called six-year-old Matthew Hoke as a witness. Matthew began by testifying he did not remember who was driving the Oldsmobile at the time of the accident. Matthew then testified as follows: (1) Swank fell from a tree onto glass and injured his head and stomach; (2) at the time of the collision they were attempting to bring Swank to the hospital; and (3) he told the police that defendant was driving at the time of collision. Matthew then nodded affirmatively when asked whether defendant was driving at the time of the accident.

Defendant's tactics consisted mostly of attempting to show that Rex Jr.'s family tried to influence him to believe defendant was the driver of the Oldsmobile. Defendant did not testify. The major thrust of defendant's contention that the evidence could not support a finding defendant's guilt had been proved beyond a reasonable doubt centered upon the weakness of the testimony of the boys. He maintains Matthew was equivocal and Rex Jr. unreliable. Defendant maintains Rex Jr. made a prior statement to a police officer which was inconsistent with his trial testimony, but no evidence was presented of such a statement. In contending the evidence is sufficient to prove defendant was the driver of the Oldsmobile, the State relies partially on evidence that only defendant had facial injuries indicating his face, mouth, and chest hit the steering wheel of the Oldsmobile. The steering wheel had been damaged in a way some described as indicating the driver's body had been driven into it.

■■ Defendant claims the foregoing argument is too conjectural to have much weight. He maintains his described injuries could have occurred when he hit the ground or could have resulted from his face coming into contact with a headrest. However, the court had the opportunity to hear the testimony of the two boys and witness their demeanor and manner while on the stand. Determination of their credibility was almost entirely that court's function. That testimony, together with whatever corroboration that court might find in the circumstances of defendant's injuries, was fully sufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that defendant was driving the Oldsmobile at the time of the collision. *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267, 277.

■ Defendant further maintains that even if the court found he was driving the Oldsmobile and was intoxicated at the time of the collision, he was not acting recklessly because he was trying to help Swank, who was injured. The evidence was disputed as to where the occupants of the Oldsmobile were headed at the time of the collision. Matthew Hoke testified they were headed for a hospital, while Rex Jr. stated they were taking Swank home. Either way, the desire to help Swank would not have justified driving while intoxicated or running the stop sign, even if an emergency existed which would negate the recklessness of driving at a high speed.

The evidence of defendant's guilt was such that a reasonable trier of fact could convict. *Collins*, 106 Ill. 2d at 261-62, 478 N.E.2d at 277.

Defendant next argues that the trial court erred when, over defendant's objection, it received into evidence a written medical report indicating defendant had a blood-alcohol content of 0.147 grams

per deciliter. This evidence was received pursuant to section 11—501.4 of the Illinois Vehicle Code (Code), which states as follows:

"Admissibility of written blood alcohol test results conducted in the regular course of providing emergency medical treatment. (a) Notwithstanding any other provision of law, the written results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code or a similar provision of a local ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961, when each of the following criteria are met:

(1) the blood alcohol tests were ordered by a physician on duty at the hospital emergency room and were performed in the regular course of providing emergency medical treatment in order to assist the physician in diagnosis or treatment;

(2) the blood alcohol tests were performed by the hospital's own laboratory; and

(3) the written results of the blood alcohol tests were received and considered by the physician on duty at the hospital emergency room to assist that physician in diagnosis or treatment.

(b) The confidentiality provisions of law pertaining to medical records and medical treatment shall not be applicable with regard to blood alcohol tests performed under the provisions of this Section in prosecutions as specified in subsection (a) of this Section. No person shall be liable for civil damages as a result of the evidentiary use of blood alcohol test results under this Section, or as a result of that person's testimony made available under this Section." Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4.

The emergency room doctor who treated defendant on the evening of the accident was called by the State to lay the foundation for the admissibility (under section 11—501.4 of the Code) of the blood-alcohol tests performed on the defendant. That doctor testified that a blood-alcohol test was done in the regular course of his treatment of defendant and was used to assist him in that treatment. Other evidence established that the tests were performed by the hospital's laboratory.

On appeal, defendant renews the argument he made in the trial court, which is that section 11—501.4 of the Code conflicts with Su-

preme Court Rule 236 (134 Ill. 2d R. 236), is unconstitutional as a result of that conflict and, accordingly, could not serve as the basis for the admissibility of the defendant's blood-alcohol test results. We disagree.

Supreme Court Rule 236 states as follows:

"(a) Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind.

(b) Although medical records or police accident reports may otherwise be admissible in evidence under the law, subsection (a) of this rule does not allow such writings to be admitted as a record or memorandum made in the regular course of business." 134 Ill. 2d R. 236.

Defendant argues that section 11—501.4 of the Code conflicts with Supreme Court Rule 236 because that section provides for the admissibility of certain medical records—the written results of blood-alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room—as a business record exception to the hearsay rule, whereas Supreme Court Rule 236 provides that, "[a]lthough medical records *** may otherwise be admissible in evidence[,] *** this rule does not allow such writings to be admitted [as a business record exception to the hearsay rule]." (134 Ill. 2d R. 236(b).) However, careful reading of these two provisions reveals this claimed conflict to be illusory.

■ Section 11—501.4 of the Code provides that written results of blood-alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule, *but only under very limited circumstances*. Those limited circumstances are set forth in subsections (1), (2), and (3) of section 11—501.4(a) of the Code and were designed to insure that the written results of these blood-alcohol tests would be trustworthy and reliable. That section ensures trust-

worthiness and reliability by requiring the timely involvement of the physician actually treating the person whose blood test results are at issue. The legislature obviously concluded that if these blood-alcohol test results are sufficiently trustworthy and reliable for the emergency room physician to use and consider when deciding what treatment is appropriate, then those results are sufficiently trustworthy and reliable to be received into evidence at a later trial. We note that a further limitation upon the admissibility of such test results is that section 11—501.4 of the Code applies only in prosecutions for reckless homicide, such as in the present case, or for driving while under the influence of alcohol, other drug, or combination thereof, in violation of section 11—501 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501).

■ This analysis makes clear that the admissibility under section 11—501.4 of the Code of such blood-alcohol tests as a business record exception to the hearsay rule occurs *only after* the other statutory prerequisites have been met. Accordingly, section 11—501.4 is not in conflict with Supreme Court Rule 236 because section 11—501.4 imposes requirements for admissibility unrelated to a document's admissibility under the business record exception to the hearsay rule, which is all that Supreme Court Rule 236 addresses.

■ In *People v. Williams* (1988), 124 Ill. 2d 300, 529 N.E.2d 558, the supreme court similarly addressed a defendant's argument that a statutory enactment (giving the State the right under section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(c)) to a substitution of judge) was unconstitutional because it conflicted with Supreme Court Rule 21(b) (107 Ill. 2d R. 21(b) (providing for general administrative authority in the chief judge of the circuit)), and stated the following:

"[A]ll legislation carries with it a strong presumption of constitutionality. [Citations.] Section 114—5(c), at issue here, is no exception. The legislature cannot enact statutes 'solely concerning court administration or the day-to-day business of the courts' [citations], but may enact statutes complementing the authority of the judiciary [citations]. If legislation conflicts with a rule of the judiciary, our court will seek to reconcile the legislation with the judicial rule. [Citations.] Where, however, a statute 'directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority,' the rule will prevail over the statute." (*Williams*, 124 Ill. 2d at 305-06, 529 N.E.2d at 560.)

*Williams* stands for the proposition that courts should conclude that a statute conflicts with a supreme court rule *only* when the statute and the rule are directly and irreconcilably in conflict, and that before so concluding the court must "seek to reconcile the legislation with the judicial rule." (*Williams*, 124 Ill. 2d at 306, 529 N.E.2d at 560.) We find section 11—501.4 of the Code and Supreme Court Rule 236 to be not in conflict at all, much less "directly and irreconcilably."

Defendant next argues that the trial court erred when it permitted Rex Jr. and Matthew Hoke, two six-year-old children, to testify because their testimony did not demonstrate that each child was sufficiently mature to appreciate the moral duty to tell the truth. As previously noted, the court found both children competent to testify based upon hearings it conducted on that question. Defendant argues that because "there was no evidence" to indicate that either of the children understood that he had a moral duty to tell the truth, the trial court should not have permitted either to testify. We are unpersuaded.

We note that this trial took place after section 115—14, dealing with witness competency, was added to the Code of Criminal Procedure of 1963 (Criminal Code) by Public Act 85—1190 (Pub. Act 85—1190, §3, eff. Jan. 1, 1989; 1988 Ill. Laws 1480, 1483 (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 115—14)). That new section states as follows:

"Witness Competency. (a) Every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter, except as provided in subsection (b).

(b) A person is disqualified to be a witness if he or she is:

(1) Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him or her; or

(2) Incapable of understanding the duty of a witness to tell the truth.

(c) A party may move the court prior to a witness' testimony being received in evidence, requesting that the court make a determination if a witness is competent to testify. The hearing shall be conducted outside the presence of the jury and the burden of proof shall be on the moving party." Ill. Rev. Stat. 1989, ch. 38, par. 115—14.

■■ ■ In *People v. Trail* (1990), 197 Ill. App. 3d 742, 555 N.E.2d 68, this court construed the above section as follows:

"We interpret this new section as a legislative determination to discard the body of law that had developed regarding witness competency, particularly the more rigid of those former rules, such as always requiring competency hearings for pro-

spective witnesses under 14 years of age." (*Trail*, 197 Ill. App. 3d at 748, 555 N.E.2d at 72.)

We reaffirm our holding in *Trail* and add that the argument defendant makes in this case is part of that "body of law that had developed regarding witness competency" that we determined in *Trail* the legislature intended to discard.

By enacting section 115—14 of the Criminal Code, the legislature deemed every person qualified to be a witness unless he or she is *incapable* of either expressing himself or herself so as to be understood (Ill. Rev. Stat. 1989, ch. 38, par. 115—14(b)(1)) or of understanding the duty of a witness to tell the truth (Ill. Rev. Stat. 1989, ch. 38, par. 115—14(b)(2)). That statute provides that the burden of proof on the question of a witness' competency shall be on the party who is challenging that competency by requesting the court to make a determination if the witness is competent to testify. (Ill. Rev. Stat. 1989, ch. 38, par. 115—14(c).) Accordingly, the defendant in the present case has the argument backwards: it was *his* burden to establish that the children who testified were incapable of understanding the duty of a witness to tell the truth. If, as defendant claims, there was no evidence regarding the ability of the children to understand the duty of a witness to tell the truth, then defendant has failed to meet his burden under the statute.

■ We further note the trial court has the superior opportunity to take into account the demeanor of a witness when determining his or her competency, and a determination that a witness is competent will be overturned only when it appears the trial court has abused its discretion. (*People v. Garcia* (1983), 97 Ill. 2d 58, 75, 454 N.E.2d 274, 280.) Our review of the record in this case demonstrates no abuse of the trial court's discretion in letting either of these children testify.

Defendant's final claim of error arises from the court's consideration of the statements volunteered by defendant during the prosecutor's closing argument. During that argument, the following colloquy occurred:

> "[Prosecutor]: Your Honor, the driver of the Oldsmobile ate that steering wheel.
>
> DEFENDANT: Yes, my ribs did too. All of them were broke."

Following the finish of the prosecutor's closing argument, defendant again interrupted by saying "I'm sorry that I was trying to save a person and I did that. I don't even remember it."

In speaking before announcing its decision, the trial court noted that defendant's foregoing statements tended to indicate he was the driver of the Oldsmobile. The court then stated:

"I am firmly convinced that this would have been my same decision without these statements of you, Mr. Hoke. But in the human mind, I can never be sure. I just feel compelled to point out that, again, even though I am 99 percent convinced that I would have made the same decision even without those statements, I would be lying if I said I didn't or that I ignored them. I don't think the human mind can do that."

Defendant maintains the trial court improperly considered the statements as evidence of an admission by defendant he was the driver of the Oldsmobile. In support of his argument, defendant cites *People v. Foss* (1990), 201 Ill. App. 3d 91, 94-95, 559 N.E.2d 254, 256, wherein the court said it was improper for the prosecutor to ask the jury to watch the defendant's reactions during the trial as certain of the State's witnesses testified. The Second District Appellate Court in *Foss* stated the following: "Defendant's demeanor, in any respect other than when he is testifying, does not constitute evidence in the case." *Foss*, 201 Ill. App. 3d at 95, 559 N.E.2d at 256.

For two reasons, we need not decide whether we agree with *Foss*. The first reason is because, even if the court's consideration of the outburst as evidence would have been improper, we are satisfied the court did not consider the outbursts as evidence. The other reason is that consideration of bodily activity by a defendant who has not testified is much different from consideration of a defendant's direct statement in open court.

The forthright statement by the court indicates a high degree of certainty it had chosen to eliminate consideration of the statement contained in the outburst. The court was merely speaking to the inherent inability of the human mind to completely discard information put before it. Even if the information contained in the outburst could not properly be considered, a defendant who improperly puts such information before a trier of fact must bear the burden of any subtle prejudice that results. Any other rule would permit an accused to nullify any trial by putting such information before a trier of fact.

Cases such as *Foss, People v. Jenko* (1951), 410 Ill. 478, 102 N.E.2d 783, *United States v. Schuler* (9th Cir. 1987), 813 F.2d 978, and *Good v. State* (Tex. Crim. App. 1986), 723 S.W.2d 734, have been concerned with the consideration by the trier of fact of in-court conduct of an accused which, unlike here, did not involve a direct statement. No such case involving a direct statement by an accused not

made on the witness stand has been called to our attention. Clearly if the statement here had been made while the State could still put on evidence, and if the existence of the statement was not deemed evidence, the State could have put the matter before the jury by the testimony of anyone who was in the courtroom and heard the statement. The latter procedure would seem to be an unnecessarily roundabout way of placing the existence of the statement before the jury. Here, the case is complicated by the fact the statement occurred after proofs had closed.

Because we are satisfied the court did not give consideration to the statement in question of defendant, we need not decide whether consideration would have been proper when the statement was made after the close of evidence. We are not holding such consideration would not be proper.

We affirm for the reasons stated.

Affirmed.

LUND, P.J., and STEIGMANN, J., concur.