646 N.E.2d 305 (1995)
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
David G. LEWIS, Defendant-Appellant.
No. 4-94-0045.
Appellate Court of Illinois, Fourth District.
Argued December 14, 1994.
Decided February 3, 1995.
As Modified on Denial of Rehearing March 8, 1995.
*306 George F. Taseff, argued, Bloomington, for David G. Lewis.
Charles G. Reynard, State's Atty., Bloomington, Norbert J. Goetten, Director, State's Attys. Appellate Prosecutor, Robert J. Biderman, Deputy Director, State's Attys. Appellate Prosecutor, David E. Mannchen, argued, Staff Atty., State's Atty. Appellate Prosecutor, Springfield, for People.

MODIFIED ON DENIAL OF REHEARING
Justice STEIGMANN delivered the opinion of the court:
In November 1993, a jury convicted defendant, David G. Lewis, of three counts of official misconduct. (720 ILCS 5/33-3 (West 1992).) The trial court sentenced him to 30 months of probation, and as conditions thereof, imposed 120 days in jail, 100 hours of community service, and a $500 fine. Defendant appeals, arguing that (1) the court erred in denying his motion to suppress his statements to police; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the charges against him were unconstitutionally vague; (4) the court erred in refusing to sever charges against him; and (5) he was denied a fair trial when a police detective testified that a witness agreed to take a polygraph.
We reverse and remand for a new trial.

I. BACKGROUND
In October 1992, T.S., then 29 years old, reported to the McLean County sheriff's department certain incidents which occurred between her and defendant, her probation officer. T.S. had four to six visits with defendant at his office during which he closed the door, complimented T.S., held her hands, and made sexual comments. During later visits, he hugged and kissed T.S. and masturbated in front of her. He asked to see her underwear and told her he wanted her sexually.
Based upon T.S.' allegations, the trial court authorized an eavesdropping device to enable the sheriff's department to listen and record conversations between T.S. and defendant. After listening to the recorded conversations, the sheriff's department sought to interview defendant. His supervisor, Dallas Lyle, asked him to accompany Lyle to the sheriff's department. Lyle provided no explanation for his request. Defendant went with Lyle to the sheriff's department, which was located in the same building as defendant's office. He was greeted by two detectives who were *307 waiting to interview him, and they took him into an office.
Defendant's recorded interview lasted nearly three hours and began with the detectives telling him they received information concerning sexual improprieties taking place in his office. They did not accuse him, but instead they told him it was routine "to check on these things." Although he repeatedly denied the allegations, one of the detectives advised him of his Miranda rights about 30 minutes into the interview.
At one point in the questioning, the detectives confronted defendant with the tape of his conversations with T.S. He then admitted he kissed and hugged her, but denied masturbating in front of her. He also claimed T.S. "came on" to him, not the reverse. The detectives explained that he faced criminal charges of aggravated battery, sexual abuse, and official misconduct. He was then arrested and taken to the county jail. He was also suspended from his duties as a probation officer.
The detectives subsequently learned about other incidents involving defendant and other women on probation. Each of these women gave statements to the detectives and testified at trial.
The State charged defendant in an 11-count indictment with three counts of aggravated battery and eight counts of official misconduct. The charges involved four different women. The jury found defendant guilty on three counts of official misconduct, not guilty on two aggravated battery counts, and could not reach verdicts on the other counts.

II. ANALYSIS

A. Reference to a Polygraph Examination

Defendant initially contends that he was denied a fair trial because a detective testified that T.S. agreed to take a polygraph examination. During the State's direct examination of the detective, a 13-year veteran of police service, the following exchange took place:
"Q. [State's Attorney:] And what was the first thing you did then as far as the interview?
A. [Detective Deerwester:] I interviewed [T.S.] as far as the allegations.
Q. And after you did that what did you do?
A. She agreed to take a polygraph exam.
Q. And
[Defense Counsel]: Objection, Judge.
THE COURT: Sustained.
[Defense Counsel]: I object and ask that it be stricken.
THE COURT: That will be stricken from the record. The jury will be asked to disregard it."
The State elicited no further remarks concerning a polygraph exam and offered no comment upon the detective's remark. Defendant moved for a mistrial, which the court denied. Defendant argues that the trial court erred in denying his motion for mistrial.
The decision whether to grant a mistrial rests within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent an abuse of discretion. (People v. Britt (1994), 265 Ill. App.3d 129, 147, 202 Ill.Dec. 636, 649, 638 N.E.2d 282, 295.) In order for a trial court's denial of a motion for mistrial to constitute an abuse of discretion, a defendant on appeal must show that the jury was so influenced and prejudiced by the introduction of improper evidence that it no longer could be fair and impartial. Britt, 265 Ill.App.3d at 147-48, 202 Ill.Dec. at 649, 638 N.E.2d at 295.
The trial court here determined that any prejudicial effect on the jury was insufficient to grant defendant's motion for mistrial. The State asked the detective a question that did not refer to a polygraph examination or require such a response. The trial court sustained defendant's contemporaneous objection and instructed the jury to disregard. Where a timely objection is made in response to an improper remark made before the jury, the trial court can often cure any error by sustaining the objection or instructing the *308 jury to disregard the comment. (People v. Speight (1992), 153 Ill.2d 365, 373, 180 Ill. Dec. 97, 99-100, 606 N.E.2d 1174, 1176-77.) Also, the State points out that the detective's comment indicated neither that T.S. actually took a polygraph examination, nor if she did, what the results revealed.
The Supreme Court of Illinois has repeatedly and emphatically condemned references at trial to polygraph examinations, particularly when a jury might consider such a reference to constitute some evidence of defendant's guilt. (People v. Baynes (1981), 88 Ill.2d 225, 244, 58 Ill.Dec. 819, 828, 430 N.E.2d 1070, 1079; People v. Gard (1994), 158 Ill.2d 191, 201, 198 Ill.Dec. 415, 420, 632 N.E.2d 1026, 1031.) Indeed, as defendant asserts, few rules are more established under Illinois law than this prohibition. Yet, here we are confronted with the gratuitous, volunteered testimony of an experienced police officer, who flags to the jury's attention the fact that the State's key witness "agreed to take a polygraph exam."
We sympathize with the trial court because of the dilemma it faced: whether to declare a mistrial or instead try some corrective action, such as sustaining the objection and instructing the jury to disregard what it had heard. The trial court did its best to "unring the bell," but in this case, we conclude that the polygraph reference denied defendant his right to a fair trial. In so holding, we emphasize the extensive conflict at trial between the testimony of T.S., the woman who "agreed to take a polygraph exam," and the statements of defendant regarding T.S. that the State introduced at trial. This improper polygraph reference could have substantially enhanced the credibility of T.S. in the eyes of the jury. Accordingly, we hold that the trial court abused its discretion in denying defendant's motion for a mistrial.
In closing, we add that the prosecutor retains the duty to admonish the State's witnesses never to mention polygraph examinations during their testimony. We do not know if that happened in this case, but if it did, the admonition did not "take." If the prosecutor has reason to believe a State's witness is unable to understand that admonition or unwilling to abide by it, then the prosecutor has no choice but to present the State's case without that witness' testimony.
Because we remand this case for a new trial, we address other issues presented on appeal that are likely to arise on retrial.

B. Reasonable Doubt Challenge

Defendant also argues that the State failed to prove him guilty beyond a reasonable doubt. The question on review of the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. (People v. Young (1989), 128 Ill.2d 1, 48-49, 131 Ill.Dec. 86, 97, 538 N.E.2d 461, 472.) The testimony of one credible witness is enough to convict even if contradicted by defendant. (People v. Williams (1975), 60 Ill.2d 1, 12, 322 N.E.2d 819, 825), and a reviewing court will not substitute its judgment for that of the trier of fact, who observed and assessed the credibility of witnesses. People v. Novotny (1968), 41 Ill.2d 401, 412, 244 N.E.2d 182, 188.
Defendant was convicted of official misconduct under an indictment which alleged that he acted beyond the scope of his lawful authority as a probation officer "by reason of being in violation of McLean County Court Services personnel policy which provides that conduct which could be viewed by the community as grossly immoral and thereby reflect on the Court Services Department [ (department) ] is grounds for immediate termination without notice." Defendant contends that, as a probation officer, he was a State employee, not a county employee. Therefore, he could not be found guilty of official misconduct based upon a violation of the McLean County court services personnel policy.
We need not address this argument because even if defendant were exempt from his department's personnel policy, he could still be found guilty of official misconduct. In an indictment charging official misconduct, the scope of defendant's lawful authority need not be alleged. (People v. Sims (1982), 108 Ill.App.3d 648, 651, 64 Ill.Dec. *309 267, 269-70, 439 N.E.2d 518, 520-21.) Defendant's sexual acts with probationers during the course of his official duties clearly exceeded the scope of his lawful authority, regardless of any personnel policy. The reference to the policy in the indictment constitutes surplusage, which the trial court may disregard and the State need not prove. (People v. Smith (1994), 259 Ill.App.3d 492, 501, 197 Ill.Dec. 516, 522, 631 N.E.2d 738, 744.) As a result, defendant could be found guilty of official misconduct without reference to the department's personnel policy.

C. Constitutionality of Official Misconduct Statute

Defendant also argues that the provision of the personnel policy concerning "grossly immoral" conduct is unconstitutionally vague and overbroad. Thus, he claims that the official misconduct statute, which is based upon the personnel policy, is unconstitutional as applied to him.
However, as noted above, reference to the department's personnel policy and its prohibition against "grossly immoral" conduct does not matter in this case because it is mere surplusage. Accordingly, we need not reach this issue.

D. Joinder of Charges

An 11-count indictment charged defendant involving four different victims. Defendant contends that the trial court erred in denying his motion for severance as to each alleged victim. However, the trial court possesses the discretion whether to sever charges and order separate trials, and this court will not reverse its determination absent an abuse of discretion. People v. Stevens (1989), 188 Ill.App.3d 865, 884, 136 Ill. Dec. 433, 446, 544 N.E.2d 1208, 1221.
Section 111-4(a) of the Code of Criminal Procedure of 1963 governs the joinder of criminal offenses at trial. (725 ILCS 5/111-4(a) (West 1992).) Joinder is proper where the offenses are similar or part of a single transaction or same comprehensive scheme. Factors to consider in determining whether offenses are part of the same transaction or scheme include (1) their proximity in time and location; (2) the identity of evidence between the offenses; (3) similarities in the acts and victims; and (4) whether defendant is in a similar position of authority in relation to each victim. People v. Trail (1990), 197 Ill.App.3d 742, 746, 144 Ill.Dec. 171, 174, 555 N.E.2d 68, 71; People v. Patterson (1993), 245 Ill.App.3d 586, 588, 185 Ill. Dec. 716, 718, 615 N.E.2d 11, 13.
In this case, the trial court found a similarity of victims and circumstances sufficient to show a common method of operation in perpetrating the offenses. We agree.
All the acts alleged by the State occurred between January 1991 and October 1992, and involved similar victims, namely, probationers assigned to defendant. Defendant, as their probation officer, was in a similar position of authority in relation to his victims and engaged in the same type of conduct with each. As this court held in Trail, because evidence of defendant's other crimes would have been admissible as modus operandi, we conclude that the trial court did not abuse its discretion in refusing to sever charges and order separate trials. Trail, 197 Ill.App.3d at 746, 144 Ill.Dec. at 174, 555 N.E.2d at 71.

E. Admissibility of Defendant's Statements

Defendant last argues that he was in custody for Miranda purposes when he made his statements to the detectives from the sheriff's department. Therefore, because the detectives did not give him the Miranda warnings at the outset of his interview, he contends that the trial court erred in not suppressing those statements. We disagree.
The trial court conducted a hearing on defendant's motion to suppress his statements and denied it. This court will not disturb the trial court's decision unless it is against the manifest weight of the evidence. People v. Goyer (1994), 265 Ill.App.3d 160, 164, 202 Ill.Dec. 744, 747, 638 N.E.2d 390, 393.
A defendant is entitled to Miranda warnings when he is interrogated while in custody or deprived of his freedom in any significant way. (People v. Melock (1992), 149 Ill.2d 423, 439, 174 Ill.Dec. 857, 864, 599 N.E.2d 941, 948.) A defendant is in custody for Miranda purposes when (1) he *310 subjectively believed he was in custody during the police interview, and (2) a reasonable person in defendant's position, innocent of any crime, would perceive himself to be in custody. Goyer, 265 Ill.App.3d at 165, 202 Ill.Dec. at 747, 638 N.E.2d at 393.
In this case, defendant testified he believed he was in custody during the police questioning. As a result, he has satisfied the first prong of the test. Therefore, we must consider whether a reasonable person in defendant's position, innocent of any crime, would have believed himself to be in custody.
Several objective factors should be considered in determining whether a reasonable person in defendant's position, innocent of any crime, would believe the interrogation is custodial: (1) the location, length, mood, and mode of the interrogation; (2) the number of police officers present; (3) any indicia of formal arrest or evidence of restraint; and (4) the manner by which defendant arrived at the place of the interview. (Melock, 149 Ill.2d at 440, 174 Ill.Dec. at 864, 599 N.E.2d at 948.) In this case, defendant was interviewed by two police detectives in an office, not an interrogation room. The office was located in the same building in which defendant worked, and the door was closed but unlocked. Defendant accompanied his supervisor to the sheriff's office and showed no reluctance to talk. Although defendant may have feared negative job consequences, such as insubordination, had he refused to accompany his supervisor, his decision to cooperate and go to the police was voluntary. (See Melock, 149 Ill.2d at 442, 174 Ill.Dec. at 865, 599 N.E.2d at 949.) Defendant was never handcuffed, physically restrained, booked, or fingerprinted. The detectives never threatened him or indicated compliance was required.
The trial court considered all the evidence and found that a reasonable person in defendant's position, innocent of any crime, would not have believed he was in custody during defendant's questioning. We give deference to the factual findings of the trial court, and we cannot say its determination was against the manifest weight of the evidence. Goyer, 265 Ill.App.3d at 164, 202 Ill.Dec. at 747, 638 N.E.2d at 393.
Defendant also argues that he did not waive his Miranda rights during the interrogation. Because we conclude that defendant was not in custody for Miranda purposes, we need not consider this argument further. See Goyer, 265 Ill.App.3d at 168, 202 Ill.Dec. at 750, 638 N.E.2d at 396 (fifth amendment protections do not attach to non-custodial interrogation).

III. CONCLUSION
For the reasons stated, we reverse and remand for further proceedings.
Reversed and remanded.
COOK and LUND, JJ., concur.