Carl HARMON, Jr., Petitioner–Appellant,

v.

Richard D. McVICAR, Warden,
Respondent–Appellee.

No. 95–3383.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1996.

Decided Sept. 11, 1996.

Robert J. Palmer, John Blakely, Law Student (argued), May, Oberfell & Lorber, South Bend, IN, for Petitioner-Appellant.

Steven R. Splitt (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent-Appellee.

Before BAUER, CUDAHY, and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

In a Chicago gang battle of Vice Lords and Stony Hoods versus Black Mobsters, Kevin Jackson lost his life. Carl Harmon, among others, was convicted of his murder. Harmon now appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We affirm.

## Background

After a jury convicted him of murder, battery, and mob action, Harmon appealed unsuccessfully in the Illinois state courts, *People v. Harmon*, 194 Ill.App.3d 135, 141 Ill. Dec. 94, 550 N.E.2d 1140 (Ill.App. 1 Dist.), *appeal denied*, 132 Ill.2d 550, 144 Ill.Dec. 261, 555 N.E.2d 380 (1990), and then filed a petition for habeas relief in federal court.

On August 20, 1983, Harmon attended a party in Evanston with David Thomas, Tyrone Patterson, and Juan McCune. Harmon, Thomas, and Patterson were members of the Vice Lords. McCune was a member of the Stony Hoods, a gang aligned with the Vice Lords. After the party, the four walked toward the 1623 Club, a hangout for the rival Black Mobster gang. On the sidewalk outside the club, the four jumped and beat up two Black Mobsters, Melvin Smith and Andre Brown.

The four then went to Thomas' house, where they sat talking until Kevin Jackson, another Black Mobster and the eventual murder victim, drove up. As Jackson got out of the car, the four men jumped him. Jackson swung at Patterson and then fell to the ground. Harmon kicked Jackson in the head and side for approximately 10–15 minutes, forcing Jackson's head against the curb. The four then put Jackson in the backseat of the car, drove to the dead end of Dewey Street, and dragged him out of the car, pushing his face into a puddle. As Jackson struggled for air, Harmon said, "get up or die."

Nancy and Laquita Adams testified that at the time these events transpired, they were looking out the front window of their Dewey

Street home. They saw a parked car outside, heard thumping and slapping noises, and saw some men hitting something. They identified one of the men as David Thomas. About ten minutes later, they saw that same car pull up by the driveway. A man got out, walked alongside the house, and got back in the car. As the car travelled north, Nancy heard some shots being fired.

Police later recovered the car with a bullet hole in the rear window, a brownish-red stain on the back seat, and ten latent fingerprints. Officer Michael Gresham, an Evanston Police gang crimes investigator, testified that Jackson's body was found with the left leg crossed over the right, and with the hands extended over the head in the "V" shape which he recognized as a Vice Lord "calling card." Officer Gresham also had known Harmon for six or seven years and believed him to be a member of the Vice Lords. Gresham testified that the top hat, cane, and V.L. initials that Harmon has tattooed on his right arm are all Vice Lord symbols. On his left arm is tattooed "Mojack," which means "enforcer."

At trial, but outside the presence of the jury, the State informed defense counsel of its intention to call Patterson and Thomas as witnesses. The defense objected on the ground that both intended to invoke their Fifth Amendment right against self-incrimination. The trial court thereafter permitted the State, in front of the jury, to indicate its desire to call both men as witnesses, but then instructed the jury that the State was precluded from calling the accomplices as witnesses.

The defense case included testimony from Evanston Police Officer Mitchum that Andre Brown initially told him that only Patterson had hit him in the altercation in front of the 1623 Club. The defense also presented the testimony of a forensic scientist that none of the prints on the car matched Harmon's. The defense also presented evidence that Nancy Adams saw only three people outside

the house but Laquita Adams originally saw five or six people.

The jury returned guilty verdicts on each count, and the court sentenced Harmon to 40 years imprisonment for the murder of Kevin Jackson, thirty days each for mob action against Andre Brown and Melvin Smith, and 364 days each for the battery of Brown and Smith. Harmon has raised the same three arguments in the Illinois Appellate Court, the district court, and this court in pursuit of post-conviction relief: 1) the trial court erred in joining the offenses of mob action, battery, and murder; 2) the State did not prove him guilty of murder beyond a reasonable doubt; and 3) the trial court erred in permitting the State to call certain witnesses in the presence of the jury when both the prosecution and defense knew that the witnesses would invoke the Fifth Amendment privilege against self-incrimination.

**Analysis**

■ Federal courts may grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. 28 U.S.C. § 2254; *Kavanagh v. Berge,* 73 F.3d 733, 735 (7th Cir.1996). Harmon's petition has not challenged the Illinois Appellate Court's statement of facts, and those facts are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Kines v. Godinez,* 7 F.3d 674, 677 (7th Cir.1993), *cert. denied,* 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 (1994).[1] With respect to the district court's denial of habeas relief, we review the district court's findings of fact under a clearly erroneous standard and its legal conclusions *de novo. Neumann v. Jordan,* 84 F.3d 985, 987 (7th Cir.1996).

*A. Joinder*

■ Under Illinois law, two or more offenses may be joined if the offenses are based on the same act or part of the same

---

1. President Clinton signed the "Antiterrorism and Effective Death Penalty Act of 1996" (Pub.L. No. 104–132, 110 Stat. 1214) into law on April 24, 1996, while this case was pending on appeal. We need not determine to what extent the Act's amendments to federal habeas review govern

cases pending when the Act became effective because we determine that even under the more expansive scope of review prior to the Act, Harmon was not entitled to federal habeas corpus relief. *See Stone v. Farley,* 86 F.3d 712, 716 n. 3 (7th Cir.1996).

comprehensive transaction. 725 ILCS 5/111–4(a). Moreover, a trial court's determination of the propriety of joinder will be reversed only for abuse of discretion. *People v. Stevens*, 188 Ill.App.3d 865, 884, 136 Ill.Dec. 433, 544 N.E.2d 1208, 1221 (1989). But the hurdle Harmon faces is even higher. An improper joinder constitutes a federal constitutional violation only if the prejudice was so great as to deny the defendant a fair trial. *Biskup v. McCaughtry*, 20 F.3d 245, 249 (7th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 1262, 134 L.Ed.2d 210 (1996). Errors of state law do not, in and of themselves, violate the Constitution. *Neumann*, 84 F.3d at 988.

■ In this case, we need not even reach the issue of whether the joinder of offenses prejudiced Harmon because the joinder was proper. Illinois courts consider the following factors in determining whether offenses are part of the same transaction or scheme: their proximity in time and location, the identity of evidence between the offenses, and similarities in the acts and victims. *People v. Lewis*, 269 Ill.App.3d 523, 528–29, 206 Ill.Dec. 938, 646 N.E.2d 305, 309 (Ill.App. 4 Dist.), *appeal denied*, 162 Ill.2d 576, 209 Ill. Dec. 806, 652 N.E.2d 346 (1995). This case satisfies each factor. The charges that the trial court joined against Harmon were mob action and battery against Andre Brown and Melvin Smith, along with murdering Kevin Jackson. Although Harmon technically beat the victims in three incidents, all three occurred within the space of a half hour. All of the events occurred within a few blocks of each other, and all three victims were members of a rival gang. Harmon contends that his presence at the party and at the beatings of Brown and Smith do not prove that he participated in the murder of Kevin Jackson. Yet, as Harmon's counsel acknowledged at oral argument, even if the State had not charged Harmon with mob action or battery for the offenses against Brown and Smith, the court still could have admitted those incidents into evidence at Harmon's trial on the murder charge. In this situation, it is impossible to believe that the joinder of charges prejudiced Harmon and deprived him of a fair proceeding. *See United States v. Ely*, 910 F.2d 455, 459 (7th Cir.1990).

## B. Sufficiency of the Evidence

■ In reviewing a sufficiency of evidence claim we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lemons v. O'Sullivan*, 54 F.3d 357, 364 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 528, 133 L.Ed.2d 434 (1995) (emphasis in original). The State need not exclude every reasonable hypothesis of innocence. *Brumley v. Detella*, 83 F.3d 856, 862 (7th Cir.1996).

■ Notwithstanding this limited standard of review, the defense urges us to adopt the inference that because Nancy Adams saw only three people outside her house in addition to the victim, and three other defendants already have been convicted of the crime, Harmon must not have been present. This is one possible inference but it is by no means the only one. According to Juan McCune's testimony, Harmon not only was present, but he opened the car door, removed the keys, pulled Jackson from the car, rode several blocks in the car, and committed the murder. Moreover, although Nancy Adams testified in an earlier proceeding that only three men were present, she testified at Harmon's trial that she wasn't sure how many men were outside when Jackson was killed. The jury also may have made reasonable inferences about Harmon's conduct from his uncontroverted participation in the beatings of Brown and Smith that occurred only a few blocks away, and from the position in which Jackson's body was placed after the murder. It is the fact-finder, not the appellate court that determines the credibility of witnesses' testimony. *Lemons*, 54 F.3d at 364. Given that the jury was free to make its own credibility judgments of the witnesses, the evidence was sufficient to support the conviction. *Stewart v. Duckworth*, 93 F.3d 262, 268 (7th Cir.1996).

## C. Confrontation of Witnesses

■ Harmon's final argument is that the trial court's permitting the State to call witnesses whom both the defense and the

State knew would invoke their Fifth Amendment privilege, constituted reversible error because it denied Harmon's Sixth Amendment confrontation right. In this context, reversible error occurs only where the government intentionally forces the witness to invoke the privilege against self-incrimination with the result that an inference unfavorable to the accused is planted in the minds of the jurors. *United States v. Trapnell*, 638 F.2d 1016, 1024 (7th Cir.1980); *see also Namet v. United States*, 373 U.S. 179, 186–87, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963). Harmon essentially argues that the court should have precluded the State from even mentioning Thomas or Patterson as witnesses. The Sixth Amendment does not require this. Although the State announced its intention to call Thomas and Patterson, neither appeared before the jury or offered any testimony, and the judge instructed the jury that neither witness could be called to testify. Neither the State, defense, or the court mentioned the witnesses' intent to invoke the privilege, and in fact, the jury already knew that both Thomas and Patterson had been tried and convicted for the same offense for which Harmon was on trial. In these circumstances, there is no indication that the jury inferred anything about Harmon's guilt from the absence of Thomas' or Patterson's testimony.[2] The trial court's handling of the matter was enough to cure any prejudice. *See United States v. Valdez–Soto*, 31 F.3d 1467, 1474 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 859 (1995).

### Conclusion

For the foregoing reasons, the district court's judgment denying the petition for a writ of habeas corpus is

AFFIRMED.

---

**2.** The only other purported reference to Thomas' and Patterson's unavailability was the prosecutor's comment in closing argument that the jury should not expect one Vice Lord to testify against another. We have reviewed the context of this statement and agree with the district court that the comment was a reference to Juan McCune, the Stony Hood who testified against Harmon.