THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE ANDREWS, Defendant-Appellant.

First District (4th Division) No 1—88—1381

Opinion filed March 7, 1991.—Rehearing denied April 18, 1991.

Michael J. Pelletier and Gordon H. Berry, both of the State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Walter Hehner, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Willie Andrews, was convicted of armed robbery after a bench trial and sentenced to 20 years in prison. He contends on appeal that he did not receive a fair trial because of his attorney's incompetence; he was not proved guilty beyond a reasonable doubt; and the trial court erred by considering improper factors when imposing his prison term.

We affirm.

BACKGROUND

Denise Sowell, the complaining witness, testified that she and her roommate, Carmen Hunter, were at 47th and King Drive in Chicago at 2 a.m. on April 9, 1987. Sowell parked the car near the corner, in front of a restaurant, while Carmen went inside. Sowell noticed a man, whom she identified as Andrews, standing in the door of the restaurant. She said that Andrews jumped into the car, pulled a long butcher knife out of his coat, and held it to her throat. He ordered, "Pull off bitch, before I cut your throat." She eased up on the brakes but pulled the car up only a couple of feet. She told defendant she had nothing except her purse in the back. He grabbed the purse and ran off. The purse contained a wallet, identification and approximately $20.

Sowell testified that she ran into the restaurant screaming that she had been robbed and asked to call the police. She said they came a few hours later and she signed a complaint.

The following night, around 4 a.m., she and Carmen Hunter were again driving around. They entered a lounge on 47th and Forrestville to buy cigarettes. Sowell saw defendant on her way in, but he did not react to her. She called the police from the lounge, went outside, and flagged down an unmarked police car. She told the two detectives inside, Szudarski and Segers, that defendant was the man who had robbed her the night before with a knife. The officers pulled over to the sidewalk and arrested him. They found a wallet on him and a butcher knife.

Sowell further testified that at the police station she identified the wallet recovered from defendant. She said the police returned her driver's license and business cards that were inside the wallet. She did not have any identification with her in court and said she thought her driver's license had expired.

Detective Alan Szudarski's testimony corroborated much of what Sowell said concerning the arrest of defendant and the items recovered from him. He described the wallet as a vinyl identification wal-

let. He agreed that in his inventory report, he had written that the wallet contained Andrews' identification in it and he did not list anything else. At trial, however, he maintained that when the red wallet was lying on a table at the station, Sowell saw it, said it was hers, and Szudarski then looked through it. He testified that the officers kept the wallet but gave her the identification because she had none.

After Szudarski's testimony, defense counsel asked the court to recall Sowell so that he could examine the identification she supposedly had retrieved after the arrest, specifically the driver's license. The trial court questioned her regarding her driver's license. She said she no longer had a license and that it had expired the previous March (1987). She then said it had not expired at the time of the incident, April 1987. There was additional confusion over the actual expiration date of the license.

Defense counsel moved to strike Sowell's testimony, arguing that although she testified that she had called the police immediately after the incident on the first night, this was not reflected in any police reports tendered to the defense. Also, Sowell could not produce her license and the detective's report did not mention that any of her identification was in the wallet they recovered. Defense counsel also tendered to the court a police report dated April 21, 1987, eleven days after the incident. This report stated that the crime of April 9, 1987, was a strong-arm robbery, one committed without a weapon. This report was not furnished to the defense before trial, and defendant moved for a mistrial on the ground that he had prepared the case from discovery furnished him by the State. The trial court denied the defense motions to strike Sowell's testimony and the motion for mistrial, stating that defense counsel could call in the officer who wrote the report and examine him directly on the weapon issue.

Defendant's witness was his sister, Vanessa Andrews, a law student and mother of four children. She testified that on April 9, 1987, Willie was at her home the entire night. She said she had stayed up all night studying and that her boyfriend and her brother were watching television and drinking rum and cola. She testified that at around 3 a.m. defendant was watching a karate picture, which he called to her attention. She also testified that he owned a small maroon "bus pass type thing" that she had bought for him on the "el" from a man who was selling small items on the train.

After the defense rested, the court asked if counsel planned to bring in the other officer as a witness. Counsel stated he would subpoena Sowell to question her as to why she told the reporting officer that there was no weapon. The trial court continued the case for an-

other week and suggested that defense counsel bring in the author of the police report in question.

On the next trial date the State called Carmen Hunter in rebuttal. Hunter was serving a term of probation and periodic imprisonment for involuntary manslaughter. She testified that she was with Sowell on April 9 and 10 and that she had observed defendant standing about a door away from the restaurant. A few minutes after Hunter went into the restaurant, Sowell came in and said she had been robbed at knife point. The next morning, at 4 a.m., Hunter was again with Sowell. They went to a lounge to buy cigarettes. According to Hunter, Sowell told her to keep an eye on the man she identified as defendant while Sowell called the police. Hunter's recollection of what defendant was wearing was vague and she said she'd just taken "a glance" at him.

After the State rested in rebuttal, defense counsel said he had nothing further. Sowell was in court and had talked to defense counsel. He said he did not plan to call her as a witness.

During his summation, defense counsel cited the police report, which he had received a week after trial began, emphasizing that it stated "no weapon" had been used. That would reduce the armed robbery charge to simple robbery.

The trial court's comments reveal that the court found Sowell's testimony to be clear as to what had happened. The court noted that simply because Detective Szudarski's report only mentioned defendant's identification in the wallet did not mean that Sowell's identification was not there also. The court did not mention the police report that referred to the lack of a weapon. Expressing skepticism over the testimony of the defendant's sister, the court found that the State's witnesses had been consistent in their testimony. Accordingly, the court determined that the State had carried its burden of proof.

At the sentencing hearing, the court noted that defendant had served 15 years for second degree murder in Tennessee and remarked that his conduct in the pending case caused harm or serious threats of harm. Accordingly, the court imposed a 20-year prison term on defendant for armed robbery.

Opinion

## I

Defendant contends that his attorney ineffectively assisted him at trial by failing to call the reporting officer who prepared the report of April 21, 1987, in which it was specifically noted that there was no

weapon. Defendant asserts that this testimony could well have given him an additional defense on the armed robbery charge. He also maintains that his counsel's apparent reliance on the inadmissible report itself was a legal error that could not be justified by any trial strategy. Moreover, defendant contends that the officer's testimony not only would have supported a reduction of the offense to simple robbery, but also would have impeached the complaining witness' entire account of the incident.

██ The State responds that defendant fails to meet either prong of the *Strickland* test for proving ineffective assistance of counsel: (1) the advice of counsel fell outside the objective standard of reasonable competence demanded of attorneys in criminal cases; and (2) there is a reasonable probability that but for counsel's unprofessional error, the result of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) If the court finds that the alleged errors did not result in sufficient prejudice, the court need not determine whether the performance of counsel was deficient. *People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246.

██ In the pending case, we cannot say that defense counsel's failure to call the police officer to testify regarding the April 21 report was sound trial strategy. Nor do we agree with the State that because of the alibi defense the officer's testimony regarding the weapon or lack of weapon is "totally irrelevant." On the contrary, credible proof that there was no weapon could have reduced the conviction to simple robbery and reliance on an alibi defense does not preclude an accused from the benefit of any reduction in the grade of offense.

Nevertheless, we believe that even if the officer had testified it is highly unlikely that the outcome of defendant's trial would have differed. The contents of the report, as recited by the trial court in the record, are as follows:

> "April; 4-21. In summary, R/O vaguely remembers details of this reporting offense. Victim was sitting in her vehicle in front of a public address whereupon an unknown male black jumped in the passenger side vehicle and took victim's purse, also U.S. currency and personal valuables. It has strong arm, no weapon."

The reporting officer who presumably took Sowell's telephone call did not write up the incident until 11 days after the occurrence. If his memory of the incident was admittedly vague at that point it is doubtful that it would have been any clearer at trial, a year later. Moreover, the trial court did state that it would consider the report "as to

its credibility" but would not grant the defense motion for mistrial based on the alleged discovery violation. The court gave defense counsel ample time to subpoena the officer to testify.

The State's witnesses testified positively as to the existence of the butcher knife. Sowell, as victim and eyewitness, saw him take the knife from his jacket and hold it to her throat. The arresting officers, Szudarski and Segers, testified that Sowell told them about the butcher knife when she identified Andrews to them as the one who had robbed her. A butcher knife was recovered from Andrews upon his arrest, the day following the incident. In light of this uncontroverted evidence, the significance of defense counsel's failure to call the officer with the vague memory diminishes. Even if the officer had testified that he clearly remembered Sowell's failure to mention a weapon, the trial court would have had ample evidence from which to infer that the robber did in fact carry one.

There is a difference between a victim's failure to report a knife and her positive statement that the assailant was unarmed. Only if the reporting officer could remember at trial that Sowell actually told him that her assailant had no weapon would the officer's testimony be of significance. In such a case, the trial court could consider the statement as an admission of the complaining witness and therefore it would be substantive evidence of a prior, inconsistent statement. But this scenario is a rather farfetched one and we need not give it much credence. The overriding consideration is whether the defense attorney's failure to call the officer resulted in an unfair trial, one that would have had a different outcome if the officer had testified.

As the trial judge commented, he would consider the April 21 report for what it was worth, under the rubric of credibility. The reporting officer's own credibility was already diluted by his admission that the report, made 11 days after the event, was based on his vague recollections. The officer may well have taken many other calls around the time of the incident and in the days before preparing his report. His notation of "no weapon" could be attributed to the fact he did not recall if there had been one reported. Or, it is possible Sowell did not mention a weapon in her initial summon for police help. We conclude that any prejudice to defendant resulting from his lawyer's failure to call the police officer who wrote the April 21 report was insufficient to change the outcome of the trial under the *Strickland* standard. Therefore, we hold that Andrews has failed to establish that his trial attorney's performance violated his constitutional right to effective assistance of counsel.

## II

 █ Andrews next challenges the sufficiency of the evidence against him. He primarily attacks the victim's account of the incident and the corroboration of that account by her roommate, Carmen Hunter. He asserts that Sowell's account of the incident was "unconvincing" because, among other things, she merely eased the car forward a few feet when the assailant held a knife to her throat and ordered her to take off. As a second example of behavior that defendant deems to be inconsistent with having a knife at her throat, defendant cites the fact Sowell stared at her assailant rather than straight ahead or at the knife.

We cannot agree that Sowell's behavior was inconsistent with having a knife at her throat. On the contrary, it seems more likely that a driver with a knife at her throat would ease the car forward rather than pull out fast and it further seems quite plausible that a knife under one's chin would focus attention on the person holding the knife.

Next, Andrews contends that Carmen Hunter was not a believable witness either, both because she was on probation for manslaughter and because she admitted that she only glanced at the assailant. As the State points out, however, Hunter noticed Andrews standing in the doorway just before she entered the restaurant before the robbery and also recognized him the next night when she and Sowell spotted him in the lounge where they were buying cigarettes.

As for the claimed inconsistences between the testimony of Hunter and Sowell, we find them to be minor. The two witnesses were two hours apart on their estimate of the time the robbery occurred, for example, a matter that might actually bolster their credibility since their stories were not identical in every respect. Sowell testified that when she saw the assailant he was standing in the door of the restaurant, but Hunter saw him standing "about a door away from the restaurant." Again, both women placed him at or very near to the restaurant, and we find it inconsequential that they placed him in slightly different locations when they first saw him.

Defendant's other attacks on the credibility of the State's witnesses are similarly unpersuasive. The mere fact that Szudarski's report mentioned only that Andrews' identification was in the wallet recovered from his person does not mean that the wallet did not contain the victim's as well. Sowell identified the small red wallet as hers, and the officer testified that he went through it, found her identification therein, and returned it to her.

Questions relating to witness credibility are specifically matters for the fact finder to resolve. (*E.g., People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267.) This court is restricted to the high standard of reviewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find the offense proved beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461.) We can and we do.

### III

The third and final issue concerns the propriety of the court's sentencing determination. Although Andrews' 20-year prison term is within the statutory, unextended range for the offense of armed robbery, Andrews argues that the trial court wrongly considered an aggravating factor that is already part of the crime charged. In addition, he charges that the trial court made an unfounded comment on the issue of possible harm to the victim.

The trial court stated, at the sentencing hearing:

"The court has taken into consideration that your conduct certainly has caused others serious harm, threats of harm. No excuses for your conduct ***.

\* \* \*

The court remembers this crime. A young lady, you put a knife to her throat, stole property of hers. I'm not going to give you a medal because you didn't cut her throat or stab her. As your counsel said she wasn't hurt. But for the grace of God you were separated before she did get injured."

■ One of the statutory factors in aggravation that the sentencing judge may consider is that "the defendant's conduct caused or threatened serious harm." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(1).) According to Andrews, such harm or threat of harm is an "inherent element" of armed robbery and thus cannot be doubly punished by way of the aggravating factors. Andrews analogizes the situation in this case with that in *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, a burglary case in which the trial court had considered the proceeds of the crime as a factor in aggravation because one of the provisions of the sentencing code allowed enhancement of a sentence if the offense was done for "compensation." The supreme court refused to equate "proceeds" with "compensation" and reasoned that because most burglaries and all thefts involve "proceeds" from the crime itself it is reasonable to conclude that the legislature already had considered the element of receiving compensation in defining the offense. Therefore, *Conover* held that a defendant's receipt

of proceeds from the crime could not be used in the sentencing determination as a basis for increasing the penalty.

The State does not dispute the fact that the trial court may not consider a statutory or inherent element of the offense as an aggravating factor. (See *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181.) The case law does support, however, a consideration of the degree of force employed to commit a theft or robbery. (*People v. Tolliver* (1981), 98 Ill. App. 3d 116, 117-18, 424 N.E.2d 44.) The gravity of the offense and surrounding circumstances are primary matters to consider. See *People v. Hall* (1987), 159 Ill. App. 3d 1021, 513 N.E.2d 429.

Andrews also relies on *People v. Rhodes* (1986), 141 Ill. App. 3d 362, 490 N.E.2d 169. There, the appellate court reversed the defendant's sentence, after reviewing his lack of any criminal record, his honorable discharge from military service, and his employability, stating, "We do not believe the record in the present case evidences other than: that the defendant committed a robbery using a dangerous weapon; elements present in every armed robbery [citation]." *Rhodes*, 141 Ill. App. 3d at 364, 490 N.E.2d at 170.

■ We find *Rhodes* to be distinguishable from the pending case because here the trial court did not base its sentence on the mere fact that defendant carried a dangerous weapon while committing a burglary. The court's comments reflect concern over the great risk of harm threatened by a robber holding a butcher knife to a person's throat and ordering her to drive off. Although a degree of risk is inherent in any crime involving a weapon, we do not believe it improper for the trial court to consider the specific nature of Andrews' conduct. Moreover, the record reveals that the court also considered Andrews' prior criminal convictions, including one for second degree murder, plus the court's belief that he was a threat to the public safety and not a good candidate for rehabilitation. The trial court did not impose the maximum, 30-year sentence available but instead considered the particular circumstances of this case. Had the court based the sentence only on the finding that Andrews was armed and thus created a threat of harm without any other consideration, the sentencing determination would have been vulnerable to attack. Under the circumstances of this case, however, we do not believe that the sentence imposed was based on an erroneous evaluation of aggravating factors.

■ Likewise, we reject Andrews' assertion that the trial judge relied on unfounded matters or speculation when he noted that "but for the grace of God" the victim and Andrews "were separated before she got injured." It may be reversible error to increase a sen-

tence based on the mere speculation that a burglar could have gotten shot by "[h]iding and ducking back and forth" in a building (*People v. Allen* (1981), 97 Ill. App. 3d 38, 39, 422 N.E.2d 254, 255). In the instant case, however, the court's remark is not a vague guess about generalized possibilities of harm. Instead, there is support for the notion that when Andrews pressed the knife against the victim's throat, she could have been severely harmed, just by the movement of the car. Furthermore, the comment about the separation of victim and assailant before she was injured only reflects the judge's observation that it was a fortuity that she did not sustain an actual injury. Hence, we do not find the remark to be an unfair or speculative comment on the evidence.

For the foregoing reasons, we affirm the trial court's conviction and sentencing of Andrews for armed robbery.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.