THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL A. GOYER, Defendant-Appellant.

Fourth District    No. 4—93—0244

Opinion filed July 26, 1994.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1992, the State charged defendant, Paul A. Goyer, with aggravated arson (Ill. Rev. Stat. 1991, ch. 38, par. 20—1.1). After a February 1993 bench trial, the trial court convicted defendant of that offense and later sentenced him to eight years in prison. Defendant appeals, arguing that the trial court erred by (1) refusing to suppress his statements, and (2) improperly considering conduct implicit in the offense of which he was convicted when imposing his sentence.

We affirm.

## I. BACKGROUND

During the early hours of May 28, 1992, defendant started a fire in the basement of Carle Hospital in Urbana, Illinois, that primarily damaged part of the hospital's electrical system. Around 5:30 a.m., Officer Raymond Hutcherson of the Urbana police department was dispatched to Crystal Lake Park in Urbana with a description of defendant. Hutcherson found defendant wandering around the park near Carle Hospital and stopped defendant and asked him for identification. While checking his identification, Hutcherson explained to defendant that he was not under arrest, but that Hutcherson wanted to ask him a few questions. Soon thereafter, two other officers arrived.

Hutcherson and one of the other officers, Jeffrey Welborn, asked defendant several questions about the fire at the hospital. Defendant said that he was an employee of the hospital, but he had just quit because he was not allowed to take a cigarette break. During the conversation, Welborn indicated to defendant that they would like to talk to him further at the hospital. Welborn told defendant that he was not under arrest and that he could leave if he wanted to. Defendant agreed to accompany the officers back to the hospital. Before getting into a squad car, Welborn frisked defendant and found a disposable lighter and some matches in his pockets.

Welborn drove defendant to the hospital, arriving around 6 a.m. He left defendant in an interview room unattended while he spoke in the hallway with assistant chief Robert Pettyjohn of the Urbana fire department. Defendant was not handcuffed or restrained in any way, the door to the room was not locked, and no guard was posted. When Welborn and Pettyjohn came into the room, Welborn told defendant that he wanted to ask him some questions but that he was not under arrest and was free to leave at any time. Defendant made no response.

Welborn and Pettyjohn conducted the interview while Hutcherson silently observed from the back of the room. Welborn started by telling defendant that they were investigating a fire at the hospital. He again told defendant that he was not under arrest, was free to leave at any time, and that he would not be placed under arrest that morning regardless of any statement he might make. As the interview progressed, defendant admitted that he was not an employee at the hospital; instead, he was a patient there. Earlier that morning, he was in a basement area of the hospital and smelled smoke.

At this point in his statement, defendant said that he might wish to talk to an attorney. Pettyjohn responded that he simply wanted to learn more about the fire and was hoping defendant could help them do that. Thereafter, defendant essentially confessed to setting the fire.

At the conclusion of the interview, defendant was told that he was free to go, and he left. At no time was he given the *Miranda* warnings.

The trial court denied defendant's motion to suppress his statements, finding as follows:

"Well, it's uncontroverted that the defendant was advised any number of times during the course of this whole episode that he was not under arrest and that he was free to leave. I think a couple of the points that [the prosecutor] makes about returning the lighter to him, [and] about the fact that *** [defendant was], for all practical purposes, abandoned in this conference room at the emergency room with no one standing guard over him [are significant]. It's uncontroverted that he willingly consented to go from Crystal Lake Park to [the hospital] to discuss the matter.

I think the indicia are that this is a non-custodial interview, and there's nothing to contradict that. Because of that, I think it's not necessary to touch the question of the attorney ***. I think all the characteristics of what happened, the way it's all been described here and that's not controverted, show this was clearly

non-custodial and the motion to suppress [defendant's].confession is denied."

As stated earlier, the trial court later found defendant guilty in a bench trial of aggravated arson.

## II. DEFENDANT'S STATEMENTS

### A. *Was the Interview Custodial for Miranda Purposes?*

Defendant first argues that he was in custody when he made his statements to the police. Therefore, because the officers did not give him the *Miranda* warnings, the trial court erred in not suppressing those statements. We disagree.

Initially, we note that the ultimate issue before this court is whether to uphold the trial court's ruling on the motion to suppress. A court of review will not disturb the trial court's decision on such a motion unless that decision is against the manifest weight of the evidence. *People v. Gorman* (1991), 207 Ill. App. 3d 461, 468, 565 N.E.2d 1349, 1353.

A defendant's entitlement to *Miranda* warnings during a police interview is triggered when he is in custody or otherwise deprived of his freedom of action in any significant way. (*People v. Melock* (1992), 149 Ill. 2d 423, 439, 599 N.E.2d 941, 948, quoting *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) A defendant is in custody for *Miranda* purposes when either he is placed under formal arrest or his freedom of movement is restrained to the degree normally associated with a formal arrest. (*Gorman,* 207 Ill. App. 3d at 468, 565 N.E.2d at 1353.) Another way of stating this test is to objectively consider whether a reasonable person in the defendant's position, innocent of any crime, would believe himself to be in custody. *Melock,* 149 Ill. 2d at 440, 599 N.E.2d at 948.

### 1. Defendant's Burden of Production

In *Gorman*, this court noted the threshold issue implicit in any defendant's motion to suppress a statement: did the defendant subjectively believe that he was in custody during the interview? (*Gorman,* 207 Ill. App. 3d at 469, 565 N.E.2d at 1354.) As we noted in *Gorman*, this issue is all too often ignored because defendants typically testify that they believed themselves to be in custody. In this case, however, no such testimony was offered.

●1 Without affirmative evidence that the defendant believed he was in custody, the trial court need not consider what a reasonable person in the same position would have believed and can simply deny the motion to suppress. This is because—in addition to the objective requirement—the defendant must actually believe himself to be in

custody in order for the safeguards enunciated in *Miranda* to apply. *Gorman*, 207 Ill. App. 3d at 469, 565 N.E.2d at 1354.

The following hypothetical clarifies the issue: if a defendant testifies that he believed he was *not* in custody but instead free to leave any time he wished during his questioning by the police, would the trial court need to consider what a reasonable person in that defendant's circumstances would believe? We think not, and we hold that when a defendant makes a motion to suppress his statements because he was in custody and not advised of his *Miranda* rights, before the trial court can conclude that defendant was in custody, it must first find that (1) defendant subjectively believed he was in custody, and (2) a reasonable person in defendant's position, innocent of any crime, would also believe himself to be in custody. (*Gorman*, 207 Ill. App. 3d at 469, 565 N.E.2d at 1354.) Thus, a defendant bringing such a motion to suppress bears the burden of production to show that he subjectively believed himself to be in custody during the police questioning.

This burden of production simply requires the defendant to introduce evidence that he believed he was in custody. We note that requiring this of a defendant does not interfere with his fifth amendment right not to testify at trial because the State is prohibited from introducing a defendant's testimony from a pretrial hearing during its case in chief at trial. (*Simmons v. United States* (1968), 390 U.S. 377, 394, 19 L. Ed. 2d 1247, 1259, 88 S. Ct. 967, 976; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 104.4, at 43 (6th ed. 1994).) We further note that the great majority of defendants currently testify in support of their motions to suppress that they believed they were in custody.

We find analogous a defendant's burden in asserting self-defense in a murder case. Self-defense has two prongs: (1) the defendant's subjective belief that his killing was justified, and (2) the objective reasonableness of that belief. (Ill. Rev. Stat. 1991, ch. 38, par. 7—1.) If the defendant did not subjectively believe his actions were justified as self-defense, his claim at trial of self-defense must fail no matter how third parties might have viewed the circumstances confronting defendant at the time he killed the deceased. In other words, it is irrelevant under those circumstances whether the killing might have been done *objectively* in self-defense. Similarly, if a defendant's motion seeks to suppress his statements on the grounds that he was in custody during the police interview, yet the defendant himself testifies that he did *not* believe himself in custody, it is irrelevant whether a reasonable person similarly situated would agree.

This analysis comports with the purpose of *Miranda*, whose

warnings are designed to combat the compulsive and coercive aspect of custodial interrogation. (*People v. Patterson* (1992), 146 Ill. 2d 445, 451, 588 N.E.2d 1175, 1178.) If the defendant being questioned does not feel compelled or coerced into making a statement, whether a reasonable person would have felt the same is irrelevant, and the defendant's statements cannot be deemed the product of a compulsive and coercive environment the defendant never felt.

However, in this case, the State failed to argue this threshold issue before the trial court. Furthermore, neither party briefed this issue on appeal. Accordingly, we decline to resolve defendant's claim on this basis.

## 2. Custody

In this case, defendant clearly was not placed under formal arrest. Thus, in deciding whether he was nonetheless "in custody," we must focus (as did the trial court) on whether he was deprived of his freedom of movement to the degree normally associated with a formal arrest. *Gorman*, 207 Ill. App. 3d at 468, 565 N.E.2d at 1353.

Courts look to the following factors to evaluate whether a reasonable person in the defendant's position would believe himself to be in custody: (1) the location, mood, and length of the interview; (2) the number of police officers present; (3) the presence or absence of the defendant's family or friends; (4) any indicia of formal arrest, such as physical restraint, the show of weapons or force, booking, or fingerprinting; and (5) the manner by which the defendant arrived at the place of the interview. *Melock*, 149 Ill. 2d at 440, 599 N.E.2d at 948; *Gorman*, 207 Ill. App. 3d at 468-69, 565 N.E.2d at 1354.

Defendant argues that several of these factors, including "the extent of the knowledge of the police officers *** and the intentions of the officers," support his contention that he was in custody. We disagree and take this opportunity to clarify the very limited relevancy of a police officer's intent, knowledge, or focus. See *Gorman*, 207 Ill. App. 3d at 472-73, 565 N.E.2d at 1356-57.

●2 Many courts have routinely mentioned the interrogating police officer's intent, knowledge, or focus at the time of the defendant's interview as factors to consider in determining whether a defendant is in custody for the purposes of *Miranda*. (See, *e.g.*, *People v. Brown* (1990), 136 Ill. 2d 116, 125, 554 N.E.2d 216, 220; *People v. Holmes* (1994), 255 Ill. App. 3d 271, 286, 626 N.E.2d 412, 423; *In re C.A.G.* (1994), 259 Ill. App. 3d 595, 597, 631 N.E.2d 473, 475; *People v. Davis* (1989), 191 Ill. App. 3d 163, 169, 547 N.E.2d 568, 572.) However, the United States Supreme Court in a unanimous opinion recently reaffirmed its custody holdings regarding *Miranda* as follows:

"We hold, not for the first time, that an officer's subjective and undisclosed view concerning whether the person being interrogated is a suspect is irrelevant to the assessment whether the person is in custody.

\* \* \*

Our decisions make clear that the initial determination of custody depends on the *objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers* or the person being questioned." (Emphasis added.) *Stansbury v. California* (1994), 511 U.S. 318, 319-22, 128 L. Ed. 2d 293, 296-98, 114 S. Ct. 1526, 1527-29.

Thus, the objective determination of custody involves an analysis of the circumstances surrounding the interview as a reasonable person in the defendant's position, innocent of any crime, would perceive them. Factors beyond the perception of the defendant, such as the private thoughts of the police, are irrelevant. See *Gorman*, 207 Ill. App. 3d at 472-73, 565 N.E.2d at 1356.

If undisclosed, the officer's knowledge, suspicion, intent, focus, subjective view, or thought of any kind can neither influence the defendant nor affect the coercive atmosphere of the interview in any way. (*Gorman*, 207 Ill. App. 3d at 472-73, 565 N.E.2d at 1356-57 (officer's subjective intent relevant only to extent it affects his behavior as reasonably perceived by the defendant).) Accordingly, we reaffirm our holding in *Gorman* that, if undisclosed, an officer's subjective thoughts and beliefs are irrelevant to the assessment whether the defendant is in custody. *Gorman*, 207 Ill. App. 3d at 472-73, 565 N.E.2d at 1356-57; see *Stansbury*, 511 U.S. at 322, 128 L. Ed. 2d at 298, 114 S. Ct. at 1529; see also *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, 82 L. Ed. 2d 317, 336, 104 S. Ct. 3138, 3151 ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation").

Furthermore, in light of *Stansbury*, we conclude that those cases discussing an officer's undisclosed subjective intent or beliefs are inconsistent with the Supreme Court's holding in *Miranda* and its progeny. The Supreme Court in *Stansbury* has clarified that those cases are overruled to the extent they direct—or even permit—the consideration of such factors.

●3 In this case, defendant was interviewed by the police at the hospital, not the police station, for less than an hour. The trial court found that he voluntarily accompanied the police to the hospital to be questioned about the fire. Moreover, at each stage of defendant's

contact with the police, they informed him that he was not under arrest and was free to leave at any time. He was also told that he would not be arrested that morning regardless of any statement he might make. Perhaps most significantly, defendant was never handcuffed or physically restrained in any way, or subjected to any indicia of formal arrest, such as fingerprinting or booking.

Defendant argues, as he did to the trial court, that the number of police officers present during his interview constituted a "show of force" that convinced him he was under arrest. The trial court considered that argument in light of all the evidence and found that a reasonable person in defendant's position would not have believed himself to be in custody. We cannot say that the trial court's determination was against the manifest weight of the evidence and, accordingly, decline to reverse its ruling. See *Gorman*, 207 Ill. App. 3d at 468, 565 N.E.2d at 1353.

### B. *Defendant's "Request for Counsel"*

Defendant also argues that the trial court erred in not suppressing the statements he made after his "request for counsel" during the interview. He claims that his request was clear and unequivocal, and the police therefore violated his rights by continuing the interview. We disagree.

●4 Even assuming *arguendo* that defendant's "request for counsel" was unequivocal, it is irrelevant. If defendant was in custody during this interview, *all* of his statements from that interview would have to be suppressed because the officers never informed defendant of his *Miranda* rights. On the other hand, if the interview was noncustodial, no right to counsel exists for defendant to invoke. The fifth amendment right to counsel relates only to *custodial* interrogation. (*People v. McDaniel* (1993), 249 Ill. App. 3d 621, 632, 619 N.E.2d 214, 224; *McNeil v. Wisconsin* (1991), 501 U.S. 171, 177-78, 115 L. Ed. 2d 158, 168, 111 S. Ct. 2204, 2208-09.) Because defendant was not in custody, his statement regarding an attorney, even if considered a clear and unequivocal request, does not implicate any constitutionally protected right, and the officers were consequently not required to end the interview. *McDaniel*, 249 Ill. App. 3d at 633, 619 N.E.2d at 224.

Furthermore, we note that no sixth amendment right to counsel was available for defendant to invoke either. The right to counsel under the sixth amendment attaches only when judicial proceedings are initiated against the defendant. (*People v. Laliberte* (1993), 246 Ill. App. 3d 159, 164, 615 N.E.2d 813, 817; *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.) The United

States Supreme Court recently reaffirmed this point in *Davis v. United States* (1994), 512 U.S. 452, 456-57, 129 L. Ed. 2d 362, 369-70, 114 S. Ct. 2350, 2354, wherein the Court held as follows:

> "The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings, [citation], and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel."

Clearly, in this case, no judicial proceedings had been initiated against defendant when he mentioned the subject of counsel. As a result, defendant cannot find refuge in the sixth amendment.

Accordingly, we hold that the trial court correctly found that "it's not necessary to touch the question of [defendant's statement regarding an] attorney," and committed no error in its ruling.

### III. DEFENDANT'S SENTENCE

Last, defendant argues that his sentence must be vacated because the trial court improperly considered in aggravation conduct implicit in the offense of which he was convicted. We again disagree.

The trial court is in the best position to make a reasoned judgment as to an appropriate sentence, and this court will not reverse the trial court absent an abuse of discretion in its decision. (*People v. Nussbaum* (1993), 251 Ill. App. 3d 779, 780-81, 623 N.E.2d 755, 757.) The trial court enjoys wide latitude in imposing sentence, and this court gives great deference and weight to the sentence that court thought appropriate. (*Nussbaum*, 251 Ill. App. 3d at 781, 623 N.E.2d at 757.) Moreover, a sentence that falls within statutory limits will not be disturbed on review unless it is manifestly disproportionate to the nature of the offense. *Nussbaum*, 251 Ill. App. 3d at 783, 623 N.E.2d at 758.

In imposing sentence, the trial court may not consider the bare elements of the offense as an aggravating factor. (*People v. Miller* (1992), 225 Ill. App. 3d 92, 104, 589 N.E.2d 617, 625.) However, "[t]he gravity of the offense and surrounding circumstances are primary matters to consider." (*People v. Andrews* (1991), 210 Ill. App. 3d 474, 483, 569 N.E.2d 192, 198.) Thus, the court may reflect upon the nature of the offense, including the circumstances and extent of each element as committed. (*Miller*, 225 Ill. App. 3d at 104, 589 N.E.2d at 625.) Additionally, section 5—5—3.2(a)(1) of the Unified Code of Corrections provides that the trial court may consider that the defendant's conduct threatened serious harm as an aggravating factor. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(a)(1).) Ultimately, the severity of the sentence depends upon the degree of harm inflicted, and that fact may therefore be considered as an aggravating

factor, even if it is implicit in the offense. *People v. Saldivar* (1986), 113 Ill. 2d 256, 269, 497 N.E.2d 1138, 1143.

At defendant's sentencing hearing, the trial court stated as follows:

> "Weighed against all the factors of mitigation that operate in favor of [defendant] here, I think it's correct to focus down and pinpoint the nature and circumstances of the offense, as counsel has done, as a more serious aggravating factor. \*\*\* [T]hose fires were deliberately set. They may not have been \*\*\* on a hospital floor where there were patients, but certainly they were set in an area where any reasonable person could have contemplated in setting those fires that they had the potential for significant harm to a number of other people. Because of that factor, and it is a factor which I think outweighs the factors of mitigation here, I think that a minimum sentence to the Department of Corrections is not appropriate."

The trial court then sentenced defendant to eight years in prison.

In this case, defendant points to the trial court's comments regarding the presence of other people in the hospital when he set the fire, claiming that those comments indicate that the court improperly relied upon this fact when imposing sentence. Aggravated arson requires the defendant to know of the presence of other persons in the building. (Ill. Rev. Stat. 1991, ch. 38, par. 20—1.1(a)(1).) Thus, defendant argues that the presence of other people in the hospital is an element of the offense, and the trial court therefore cannot rely upon it as an aggravating factor in sentencing.

●5 Even assuming that the presence of other people is implicit in aggravated arson, the trial court's comments reveal that it was appropriately concerned about the vast harm defendant's actions could have caused. It did not rely upon the bare elements of the offense, but instead considered the degree to which defendant's conduct threatened serious harm to many others and the potential extent of that harm. See Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(a)(1); *Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143.

Furthermore, we note that aggravated arson is a Class X felony with a sentencing range of six to 30 years in prison. (Ill. Rev. Stat. 1991, ch. 38, pars. 20—1.1.(b), 1005—8—1(a)(3).) The trial court sentenced defendant to eight years, only two years more than the minimum sentence and well below the maximum. Clearly, this sentence is not "manifestly disproportionate to the nature of the offense." (*Nussbaum*, 251 Ill. App. 3d at 783, 623 N.E.2d at 758.) Accordingly, we hold that the sentence imposed by the trial court does not constitute an abuse of discretion.

## IV. CONCLUSION

For the reasons stated, we affirm defendant's conviction and sentence.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.