THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. HAROLD CARROLL, Defendant-Appellee.

Third District    No. 3—00—0066

Opinion filed January 4, 2001.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellee.

PRESIDING JUSTICE HOMER delivered the opinion of the court:

The sole issue presented by this appeal is whether defendant, Harold Carroll, was in custody, and therefore entitled to *Miranda* warnings, at the time he gave a taped confession. The State appeals from the trial court's order granting defendant's motion to suppress the confession. For the reasons that follow, we affirm. In so doing, we hold: (1) the proper test for determining whether an accused is in custody for purposes of *Miranda* is objective, *i.e.*, whether a reasonable person in the accused's position would consider himself to be in custody; and (2) a reasonable person in defendant's position would have considered himself to be in custody.

Defendant was charged by indictment with murdering his brother, Connie Carroll. Prior to trial, defendant moved to suppress certain oral statements and the taped confession. A brief summary of the evidence presented at the suppression hearing is as follows.

In June of 1998, Rock Island police received information from defendant's family members that defendant had implicated himself in the death of Connie Carroll, which occurred in 1962. The deceased was found dead in his car, which was parked with the motor running in the family's garage. The garage door was closed.

On September 10, 1998, Rock Island police officers Michael Noon and David Sullivan (officers) traveled to Quincy, Illinois, to the elderly care facility at which defendant resided. Defendant agreed to the officers' request to accompany them to the Quincy police department (department). The officers informed defendant that he was not under arrest, nor in custody, and that he was free to leave at any time.

The officers then took defendant to the department in an unmarked squad car. Defendant sat, unhandcuffed, in the backseat with the doors unlocked. Upon arriving at the department, the officers led defendant through the main personnel room, which has a door with an automatic lock, and into an 8-foot by 12-foot interview room with no windows.

Once inside the interview room, the officers again told defendant that he was not under arrest and was that he was free to leave at any time. The officers then began questioning defendant concerning his brother's death. At no time did the officers inform defendant of his *Miranda* rights. During the course of the interview, defendant made four different statements. First, defendant stated that he thought he had been taken to the department as a result of his ongoing separation from his wife and, specifically regarding the officers' questions, that he would never have injured his brother. Second, defendant stated that he and his brother had quarreled on the night he died and that his brother had beaten him. Third, defendant stated that he struck his brother and left him in the garage and that someone else must have shut the door.

Each one of these first three statements was met with incredulity by the officers. Finally, defendant stated that he struck his brother, started the car and closed the garage door. This initial interview lasted approximately 30 to 45 minutes.

Following defendant's admission, the officers asked defendant to provide a taped statement. They again informed defendant that he was not under arrest, nor in custody, and that he was free to leave at any time. The officers did not inform defendant of his *Miranda* rights. A taped statement was then taken from defendant concerning his involvement in his brother's death. Afterwards, defendant was photographed and taken back to his residence.

Dr. Eric Ritterhoff and Dr. Kirk Witherspoon testified on behalf of defendant. Each physician found that defendant was very susceptible

to suggestion. Dr. Witherspoon further stated that defendant was mildly to moderately retarded and that he would question the reliability of any confession given by him. Defendant did not testify at the hearing.

At the close of evidence, the trial court articulated the two issues presented for consideration: (1) whether defendant was in custody; and (2) whether defendant's statements were voluntary. The court found that defendant was not in custody when he gave his four oral statements. The court further found that all of defendant's statements had been voluntary. Thus, the court did not suppress defendant's oral statements. However, the court found that, following the fourth statement, defendant should have been informed of his *Miranda* rights because, upon admitting to the crime of murder, a reasonable person would believe that he was in custody. Accordingly, the court suppressed defendant's taped confession.

The State filed a certificate of impairment pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)) and now appeals the suppression of the tape. The trial court's decision on a motion to suppress will not be reversed unless it is manifestly erroneous. *People v. Kidd*, 175 Ill. 2d 1, 675 N.E.2d 910 (1996).

■ A suspect's entitlement to *Miranda* warnings is triggered when she is subjected to custodial interrogation. *People v. Melock*, 149 Ill. 2d 423, 439, 599 N.E.2d 941, 948 (1992). When determining whether an interrogation is custodial, a court must consider all of the circumstances surrounding the questioning, such as: (1) the time, place, length, mood and mode of interrogation; (2) the number of police officers present; (3) any indicia of arrest or evidence of restraint; and (4) the extent of knowledge of the officers and the focus of their investigation. *People v. Brown*, 136 Ill. 2d 116, 124-25, 554 N.E.2d 216, 220 (1990). While examining these factors, along with the credibility of the witnesses, the court must make an objective determination as to what a reasonable person, innocent of any crime, would perceive if he were in defendant's position. *People v. Lucas*, 132 Ill. 2d 399, 417-18, 548 N.E.2d 1003, 1009 (1989).

Contrary to this precedent, the State initially argues that defendant's subjective belief is somehow relevant in determining whether the interrogation was custodial. Noting that defendant did not testify at his suppression hearing, the State maintains that he was required to produce affirmative evidence that he believed he was in custody in order to trigger the protections afforded by *Miranda*. This proposition is supported by a line of at least three Fourth District cases: *People v. Gorman*, 207 Ill. App. 3d 461, 565 N.E.2d 1349 (1991); *People v. Goyer*, 265 Ill. App. 3d 160, 638 N.E.2d 390 (1994); and *People*

*v. Lewis*, 269 Ill. App. 3d 523, 646 N.E.2d 305 (1995). However, we reject the subjective test proposed by these cases as it contradicts the vast majority of legal precedent and other authority which states that the test for custody is strictly an objective one. See, *e.g.*, *People v. Melock*, 149 Ill. 2d 423, 440, 599 N.E.2d 941, 948 (1992) (the court expressed its continued agreement with the use of the objective test); see also *Stansbury v. California*, 511 U.S. 318, 319-22, 128 L. Ed. 2d 293, 296-98, 114 S. Ct. 1526, 1527-29 (1994) (the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned); see also *People v. Holmes*, 255 Ill. App. 3d 271, 284, 626 N.E.2d 412, 422 (1994) (specifically rejecting a subjective test in favor of the objective test); see also 2 R. Steigmann, Illinois Evidence Manual § 11:04, at 67 (3d ed. 1995) (it is irrelevant that the accused may have believed he was not free to leave because the test for custody is an objective one).

■ Having determined that we must employ an objective analysis, we turn now to the particular factors listed above which we must consider in deciding whether the interrogation at hand was custodial in nature. It is apparent that defendant voluntarily accompanied the two officers to the department and that he was informed, even after his fourth oral statement, that he was not under arrest and was free to leave at any time. Additionally, at no time was defendant physically restrained.

However, it is equally apparent that the investigation had become focused exclusively upon defendant at the time his taped confession was made. Moreover, defendant knew that the officers suspected him of murder because he had just, moments earlier, inculpated himself in the crime. Considering these facts, the trial court's finding that any reasonable person in defendant's position would have believed himself to be in custody despite the officers' assurances to the contrary was not manifestly erroneous. Thus, *Miranda* warnings should have been issued and, because they were not, the subsequent taped confession was properly suppressed.

In light of the foregoing discussion, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

LYTTON and HOLDRIDGE, JJ., concur.