NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241298-U

NO. 4-24-1298

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 22, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| GEORGE E. LOVE, | ) | No. 21CF742 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court held the trial court did not rely on any aggravating factors inherent in the offense for which defendant was convicted and sentenced.

¶ 2    A jury convicted defendant, George E. Love, of aggravated arson, and the trial court sentenced him to 12 years' imprisonment. 720 ILCS 5/20-1.1(a)(1) (West 2020). Defendant appeals, arguing the court improperly considered conduct in aggravation that was inherent in the offense for which he was convicted and sentenced. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On November 16, 2021, officers of the Peoria Police Department responded to a report of a fire at an apartment building. The initial responding officer noted flames coming from an apartment on one of the upper floors. A resident told officers she saw defendant start the fire. candle andim shout about setting the building on fire, saw him with a bottle of alcohol and a

candle, and then witnessed flames bursting out after he dropped the candle in his unit. She identified defendant in a crowd of the residents who had evacuated the building. Defendant was interviewed by officers, who indicated it appeared he was under the influence of something. Upon a cursory search of defendant during his initial detention, officers found an empty baggie and determined defendant had ingested some sort of powdery substance. Defendant was then taken to the hospital and admitted based on his behavior and initial lab results. He was later taken to the Peoria County jail.

¶ 5                                          A. The Charges

¶ 6            In November 2021, defendant was charged by indictment with one count of aggravated arson, a Class X felony. *Id.* The indictment alleged that defendant knowingly damaged a building by fire or explosive, knowing or under circumstances where he reasonably should have known that one or more persons were present. *Id.*

¶ 7            At defendant's initial bond hearing, the trial court was apprised of defendant's unusual behavior following the incident, the results of drug tests, and defendant's 24-hour stay in the hospital. Months later, defense counsel requested a psychological evaluation to determine whether defendant had a psychiatric defense and to address any fitness issues. Defendant was found fit to stand trial. Defendant asked to represent himself, citing concerns about the public defender's handling of the case. The court held a hearing and admonished defendant on the consequences of self-representation. At the hearing, the court confirmed defendant made a knowing and intelligent waiver of his right to counsel and allowed defendant to proceed *pro se*.

¶ 8            While representing himself, the State had concerns about defendant's fitness, in light of numerous pretrial motions defendant filed, many of which were repetitive and even included defendant filing his own motion to suppress claiming he did not understand the

- 2 -

*Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) because of his mental health condition. Defendant himself requested an examination. The trial court ordered an examination and reappointed the public defender. The doctor found defendant, "is fit but barely" and had the ability to understand the implications of waiving his right to be represented by an attorney.

¶ 9        Subsequently, another fitness examination was performed at the request of defense counsel. After the third examination was performed, defense counsel informed the trial court he would not be asserting any affirmative defenses based on defendant's mental status.

¶ 10        Defendant, again, asked the trial court if he could represent himself. Despite the court's admonitions, defendant persisted in his desire to waive his right to counsel. Defendant was, once again, allowed to proceed *pro se*.

¶ 11                                        B. The Trial

¶ 12        Defendant's jury trial commenced on April 9, 2024. Defendant was admonished of his right to counsel and was allowed to proceed *pro se*. The State presented testimony from multiple witnesses. The collective testimony of these witnesses is summarized as follows.

¶ 13        A resident of the apartment building identified defendant and testified she was sitting in her bedroom when she heard yelling coming from outside her window. She could not identify what the person was saying at first, but as the voice drew closer, she could hear the person yelling, "[T]hey were about to burn this mf'er down." Eventually, from her bedroom window, she saw the person turn the corner. He walked into the apartment building, and she heard him continue to repeat he was about to light the building on fire. As she continued to watch, she saw defendant go into his unit, holding what looked like an "alcohol gallon," a big bottle, and a candle. She watched as defendant made some motions and dropped the candle. Flames then shot out of defendant's window. When she called 911, she heard defendant

screaming "I lit it up" as he left the building, where he remained as first responders arrived.

¶ 14      The landlord testified multiple tenants alerted him to the fire. He rushed to the building, where he encountered first responders, the police, and tenants standing outside. He observed smoke coming out of apartment No. 13, which he identified as belonging to defendant, who had lived in the building for a little over a year. After making an in-court identification of defendant, the landlord testified days before the fire, he had given defendant a five-day eviction notice when defendant fell behind on his rent. Following the fire, the landlord carried out repairs to ensure the building met code requirements. This process, which lasted approximately one to two years, included collaborations with contractors, electricians, plumbers, carpenters, and City of Peoria officials.

¶ 15      Firefighters promptly extinguished the fire. A Peoria police detective who responded to the scene of the fire testified she was approached by a witness who identified defendant, among the crowd of other residents standing outside the building, as the person who started the fire. A fire investigator from the Peoria Fire Department observed smoke and heat damage throughout the building and determined the fire originated in the "nook" area of apartment No. 13. There was nothing in the area to indicate the fire was accidental.

¶ 16      Defendant did not call any witnesses. The jury found defendant guilty of aggravated arson. *Id.* The public defender was reappointed for sentencing.

¶ 17                    C. Posttrial Motion and Sentencing

¶ 18      Defense counsel filed a posttrial "Motion for Judgment of Acquittal Notwithstanding the Verdict or for a New Trial," raising numerous issues, including defendant's fitness during the trial.

¶ 19      Before commencing the sentencing hearing, the trial court first addressed

- 4 -

defendant's pending posttrial motion. Defense counsel argued, despite a fitness evaluation finding defendant was fit to stand trial, the court had erred by allowing defendant to proceed *pro se* because there remained questions about his fitness. The court denied the motion, noting all of defendant's behavior leading up to and throughout trial did not raise concerns about his fitness.

¶ 20        The trial court then proceeded with the sentencing hearing. The State did not present any formal evidence in aggravation, nor did defense counsel present any formal evidence in mitigation. The State argued the most compelling aggravating factor was the harm caused by defendant. The State also asked the court to consider defendant's extensive criminal record. In mitigation, defense counsel argued defendant warned tenants of the fire, had mental health issues, and was under the influence of drugs and alcohol at the time of the crime. Counsel argued the combination of defendant's mental health issues and state of intoxication caused defendant to "do something that was just completely out of his character." While acknowledging defendant's extensive criminal history, defense counsel noted his record consisted of mostly misdemeanors, not "out of control behavior type felonies" like aggravated battery, threatening people, or criminal damage to property. Defense counsel asked defendant be sentenced to the minimum term.

¶ 21        Defendant made a statement in allocution. He admitted he was under the influence of drugs on the night of the crime and noted he had not yet been on medication for his mental health issues. He took full responsibility for his actions.

¶ 22        The trial court concluded by noting it had considered the presentence investigation report, the evidence, arguments of counsel, defendant's statement in allocution, all the statutory factors in aggravation and mitigation, and the history and character of defendant. In

aggravation, the court noted defendant's criminal history and stated further that "a lot [of] people could have gotten hurt" because of his conduct. In mitigation, the court considered defendant warned everyone in the building about his intention to start the fire and stated, when "in [his] right head space," defendant "overall act[s] responsibly." However, the court further noted, when defendant is off his medication and/or is under the influence of other drugs or alcohol, he acts very detrimentally to himself and others. For the protection of the public and to deter future misconduct, the court determined a term in prison was necessary. The court sentenced defendant to 12 years' imprisonment and imposed a 3-year term of mandatory supervised release. Defendant was also ordered to pay the owner of the apartment complex the $5,000 insurance deductible. Defense counsel filed a motion to reconsider the sentence, which was denied.

¶ 23 This appeal followed.

¶ 24 II. ANALYSIS

¶ 25 Defendant argues that his sentence must be vacated and his case remanded for resentencing because the trial court improperly considered aggravating factors inherent in the offense for which he was convicted. First, defendant argues the court engaged in double enhancement during sentencing, which warrants a new sentencing hearing. Defendant acknowledges he did not raise this claim in his motion to reconsider his sentence, but he argues reversal is warranted under the second prong of the plain error rule. Second, defendant contends reversal is warranted because his counsel was ineffective for failing to raise the issue of double enhancement at sentencing and in his posttrial motion.

¶ 26 To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion. *People v. Belknap*, 2014 IL 117094, ¶ 66 (citing *People v. Enoch*, 122 Ill.2d 176, 186 (1988)). Failure to do either results

in forfeiture. *Id.* Because defendant never objected at his sentencing hearing and raises his double enhancement argument for the first time on appeal, he has forfeited it. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010).

¶ 27 There is, however, a well-established exception to the forfeiture rule. It is a limited and narrow exception that allows a reviewing court to consider an unpreserved error. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). The rule provides that courts of review may review plain errors that affect substantial rights. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Because sentencing issues are regarded as matters affecting defendants' substantial rights, they can be reviewed for plain error. *People v. Foreman*, 2019 IL App (3d) 160334, ¶ 42. Under the plain error rule, a reviewing court can consider an unpreserved error when (1) a clear and obvious error occurred and "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. Under either prong of the analysis, a defendant has the burden of persuasion. *Hillier*, 237 Ill. 2d at 545. However, the initial analytical step under the doctrine requires this court to determine whether any error occurred at all. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 28 "A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case." *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). "These circumstances include the defendant's criminal history, the defendant's potential for reform, and the recognized interest in protecting the public and providing a deterrent." *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 71. However, a trial court may not consider the elements of an offense as aggravating factors when imposing a sentence. *People*

*v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). When such factors are used for a dual purpose, it is referred to as "double enhancement." *Winchester*, 2016 IL App (4th) 140781, ¶ 71. "The prohibition against double enhancement is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense." *Phelps*, 211 Ill. 2d at 12. The double enhancement rule is one of statutory construction; therefore, "[w]hether a trial court considered an improper factor when sentencing a defendant is a question of law, which we review *de novo*." *Winchester*, 2016 IL App (4th) 140781, ¶ 72.

¶ 29          Defendant was convicted of aggravated arson for knowingly, by means of fire or explosive, damaging a building or structure when he knew or reasonably should have known that one or more persons were present in the building. See 720 ILCS 5/20-1.1(a)(1) (West 2020). Here, the trial court did not rely upon bare elements of this offense when it imposed defendant's sentence. Instead, it considered the degree to which defendant's conduct threatened serious harm to many others and the potential extent of that harm. See *People v. Goyer*, 265 Ill. App. 3d 160, 169 (1994) (holding "the severity of a sentence depends on the degree of harm inflicted" and the gravity of an offense is a primary matter to consider in sentencing). At defendant's sentencing hearing, the court stated as follows:

> "In aggravation, [defendant], a lot [of] people could have
> gotten hurt from your irresponsible actions. ***
>
> Your criminal history—and, again, the fact that a lot of
> people had the potential to get hurt. ***
>
> This conduct has got to be deterred. We cannot have people
> acting out like that where people may get hurt."

The court then sentenced defendant to 12 years' imprisonment. Defendant argues his sentence is improper because the aggravated arson statute already requires a defendant to know of the presence of "one or more persons." 720 ILCS 5/20-1.1(a) (West 2020). Consequently, defendant claims the court's comments regarding the presence of other people in the apartment building where he set the fire and the threat he posed to them indicated that the court improperly relied upon an element that was already inherent in the offense for which he was charged. We disagree. The court did not improperly rely upon an element of the offense, but instead appropriately considered the degree to which defendant's conduct threatened serious harm and the extent of the potential harm. There was no error when the court considered the degree of threatened harm. See *People v. Burge*, 254 Ill. App. 3d 85, 89 (1993) (consideration at sentencing of degree of harm threatened does not constitute double enhancement even if degree of harm inherent in the offense); see also *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007) (same).

¶ 30    In addition, we note that aggravated arson carries a potential sentencing range of 6 to 30 years in prison. See 730 ILCS 5/5-4.5-25 (West 2024). Despite defendant's extensive criminal history that included 14 convictions, 4 of which were felonies, the trial court sentenced defendant to 12 years' imprisonment, well below the maximum of 30 years for a Class X felony. A sentence that falls within the applicable sentencing range is presumptively valid. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12. This court gives great deference to the trial court and its wide latitude in imposing a sentence. *Goyer*, 265 Ill. App. 3d 160 at 169. Moreover, when an imposed sentence falls within statutory limits, the judgment will not be disturbed unless it is manifestly disproportionate to the nature of the offense. *Id.* Because the trial court did not commit any error in sentencing defendant, he cannot establish plain error. See *People v. Brant*, 394 Ill. App. 3d 663, 677 (2009) ("[I]n the absence of error, there can be no plain error.").

¶ 31 Finally, to establish ineffective assistance of counsel during sentencing, a defendant must show (1) counsel's performance fell below minimal professional standards and (2) a reasonable probability exists the defendant's sentence was affected. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88. Because we have determined that no error occurred regarding defendant's double enhancement argument, defendant's claim of ineffective assistance of counsel for failing to properly preserve the issue for review is without merit. See *People v. Jaimes*, 2019 IL App (1st) 142736, ¶ 58 ("[B]ecause there was no plain error, we need not address [the] defendant's alternative argument that his defense counsel was ineffective.").

¶ 32 III. CONCLUSION

¶ 33 For the reasons stated, we affirm the trial court's judgment.

¶ 34 Affirmed.